Vincent Figliuzzi, and Mary Jane Figliuzzi, Plaintiffs-Appellants,†

v.

Carcajou Shooting Club of Lake Koshkonong, Defendant-Respondent.

Court of Appeals

*No. 91–2426. Submitted on briefs June 24, 1992.—Decided May 13, 1993.*

(Also reported in 502 N.W.2d 876.)

†Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the brief of *Philip C. Ristow* of *Vance, Wilcox, Short & Ristow, S.C.* of Fort Atkinson.

For the defendant-respondent the cause was submitted on the brief of *Craig R. Johnson* and *Carrie E. Santulli* of *Loniello & Johnson Law Office* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. This appeal involves the hunting and fishing rights of the Carcajou Shooting Club in the land Vincent and Mary Jane Figliuzzi own in Jefferson County. If, as the trial court held, by virtue of those rights, the club possesses an easement over their

land, then the Figliuzzis acquired title subject to the club's hunting and fishing rights. Then the question is whether, as the court held, Figliuzzis' proposed condominium development on their land unreasonably infringes the club's rights. If the club does not possess an easement, then the Figliuzzis acquired their land free of the club's rights and the reasonableness of the development is not an issue. We conclude that the club possesses a profit a prendre rather than an easement.[1] We therefore reverse and remand with directions to enter judgment declaring that the proposed development may proceed.

The historical facts are undisputed. In 1896, the club paid $7,500 for a warranty deed conveying to it a parcel which apparently contained a building. The grantors also conveyed to the club

> and its stockholders the exclusive right to all fishing and shooting privileges which grantors now have upon, in and about and appurtenant to the premises now owned by grantors in Sections 16 and 21 . . . and the perpetual right to enter upon and fully and exclusively enjoy and use the same and for that purpose full rights of way and passage are hereby perpetually granted to grantee and its stockholders, hereby intending to convey to grantee and its stockholders the perpetual right to fish and shoot upon and over the lands now owned by grantors . . . and the waters adjacent thereto and to kill and take all fish and game thereon and therein.

---

[1] "Profit a prendre" takes its name from the French, "meaning 'profits to take,' the phrase 'from land' being implied." 1 THOMPSON ON REAL PROPERTY § 139, at 485 (1980) (footnote omitted). The cases frequently refer simply to a "profit," perhaps to avoid the antique stuffiness of the complete term.

The trial court made no finding regarding the total amount of land owned by the 1896 grantors to which the club's hunting and fishing rights attached. At the bench trial, two club shareholders variously estimated the amount to be 300 to 400 acres.

In July 1987, a successor to the 1896 grantors conveyed to the Figliuzzis 42.28 acres which were included in the grant of hunting and fishing rights to the club. The Figliuzzis propose to construct twenty-six condominium units on part of their land. They brought this action for a judgment declaring their right to do so, notwithstanding the club's objection that the development would interfere with the club's rights. They appeal from the judgment in favor of the club.

The easement issue arises because of Wisconsin's "thirty-year statute," originally adopted as sec. 330.15, Stats. (1941), ch. 293, Laws of 1941, and now sec. 893.33, Stats. The attorney primarily responsible for drafting the statute described it as follows:

> Chapter 293, Laws of 1941, provides in substance that no action shall be brought to enforce any claim to real estate which is based upon an instrument recorded more than thirty years previously or upon any unrecorded instrument or transaction more than thirty years old. The purpose of this legislation is to simplify and shorten the examination of record titles and otherwise reduce the legal costs incident to the sale of real property.

Tulane, *Title to Real Property — Thirty Year Limitation Statute*, 1942 WIS. L. REV. 258, 259 (footnote omitted).

In its present form, the statute, sec. 893.33(2), Stats., provides in pertinent part:

Except as provided in subs. (5) to (9), no action affecting the possession or title of any real estate may be commenced, and no defense or counterclaim may be asserted, by any person . . . after January 1, 1943, which is founded . . . upon any instrument recorded more than 30 years prior to the date of commencement of the action . . . unless . . . within 30 years after the date of recording of the recorded instrument . . . there is recorded in the office of the register of deeds of the county in which the real estate is located, some instrument expressly referring to the existence of the claim or defense, or a notice setting forth the name of the claimant, a description of the real estate affected and of the instrument or transaction or event on which the claim or defense is founded, with its date and the volume and page of its recording, if it is recorded, and a statement of the claims made.

A partial exception applies to easements and restrictive covenants.[2] Section 893.33(6), Stats., provides in pertinent part:

Actions to enforce easements, or covenants restricting the use of real estate, set forth in any recorded instrument shall not be barred by this section for a period of 40 years after the date of recording such instrument, and the timely recording of an instrument expressly referring to the easements or covenants or of notices pursuant to

___

[2] "It was felt that interests like [easements and restrictive covenants] were more likely to be overlooked and not renewed because of the fact that the owner of the right is not at all times so actively concerned with it." Tulane, *Title to Real Property — Thirty Year Limitation Statute*, 1942 WIS. L. REV. 258, 265. Attorney Tulane's observation is consistent with our conclusion that the holder of a profit possesses greater rights than those conferred by an easement.

this section shall extend such time for 40-year periods from the recording.

Section 893.33(8), Stats., provides:

> If a period of limitation prescribed in s. 893.15(5), 1977 stats., has begun to run prior to July 1, 1980, an action shall be commenced within the period prescribed by s. 893.15, 1977 stats., or 40 years after July 1, 1980, whichever first terminates.

Section 893.15(5), Stats. (1977), provided a sixty-year period of limitation as to easements. The parties agree that in 1942 the club last recorded an instrument germane to its hunting and fishing rights and meeting the requirements of sec. 893.33(6), Stats. The parties also agree as to the effect of that recording: If the club possesses an easement over the Figliuzzis' land, the sixty-year limitation applies and the club's rights are enforceable as against the Figliuzzis. If the club does not possess an easement, the thirty-year limitation in sec. 893.33(2), Stats., applies, and since the Figliuzzis commenced their action in 1990, the club's 1942 recording does not protect its hunting and fishing rights vis-a-vis the Figliuzzis.

■

Whether the club's hunting and fishing rights are an easement is a question of law. We decide questions of law without deference to the trial court's decision. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

■

The common law rule is that a property owner may convey to another the right to hunt and fish on the owner's property. "[S]uch a right is a profit a prendre and, as such, an interest in real property." *Van Camp v. Menominee Enters., Inc.*, 68 Wis. 2d 332, 343, 228

505

N.W.2d 664, 670 (1975). The *Van Camp* court did not decide whether a profit is an easement. The question before the *Van Camp* court was whether hunting and fishing rights are an "interest in lands" for purposes of the statute of frauds, sec. 240.06, Stats. (1969), and the court held that they are. The court quoted several definitions to the effect that a profit is the right to acquire by severance or removal from another's land something that was a part of the land, such as wood, coal, minerals, sand and gravel, as well as the right to take game and fish on another's land. *Van Camp*, 68 Wis. 2d at 343, 228 N.W.2d at 670. No quotation used by the *Van Camp* court includes a definition of an easement or alludes to whether a profit is an easement.

No appellate decision in this state, before or since *Van Camp*, has decided whether a profit is an easement. An earlier case, *Gadow v. Hunholz*, 160 Wis. 293, 297, 151 N.W. 810, 811 (1915), cited authorities pertaining to profits, and described the right to enter the property of another to harvest ice as "in its nature and kind a grant to take something which is a part of the soil or a product thereof and is denominated a right in the nature of an easement." A later case defined an easement "as a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the soil." *Colson v. Salzman*, 272 Wis. 397, 401, 75 N.W.2d 421, 423 (1956). The *Colson* court did not decide whether a profit is or includes an easement. Thus, almost one hundred years after the Carcajou Shooting Club obtained its hunting and fishing rights, whether those rights are an easement is an open question.

Relying on the American Law Institute's decision in 1944 to refer to easements as including profits, the trial court concluded that easements and profits are

indistinguishable and therefore the club possesses an easement over the Figliuzzis' land. See RESTATEMENT OF PROPERTY (SERVITUDES) § 450, at 2901-02 (1944), special note following the definition of an easement. The note states that in phrasing the rules applicable to easements and profits, "in no case was there a rule applicable to one of these interests which was not also applicable to the other." *Id.* at 2902.[3]

Continued reliance on the note in the RESTATEMENT OF PROPERTY (1944) is risky. The ALI is revising the RESTATEMENT OF PROPERTY. The introduction to Tentative Draft No. 1 of the RESTATEMENT OF PROPERTY (SERVITUDES) (1989), states, "The term servitude is used whenever the discussion applies to all servitudes. . . . The term profit has been resurrected from the oblivion into which it was consigned by the 1944 Restatement because it describes a device that is used for a purpose quite different from the other servitude devices, and

---

[3] Some authorities have taken the same position. Relying on the same 1944 RESTATEMENT note, 3 POWELL ON REAL PROPERTY § 404[1], at 34-4, 34-5 n.8 (1993), uses the word "easement" for both easements and profits, but immediately concedes a "practical distinction between a classification as an 'easement' or 'profit' . . . . A profit is generally thought of as being accompanied by easement rights. While courts will generally imply the easements rights, they should be made clear in the grant of the profit." *See also* Bruce & Ely, THE LAW OF EASEMENTS AND LICENSES IN LAND § 1.04[1], at 1-16 and n.2 (1988): "Because profits necessarily include the right to enter the servient tenement, they are governed by the same general legal principles that apply to easements." Bruce and Ely apparently rely on the same 1944 RESTATEMENT note. But they acknowledge that "a profit includes two property interests: the right to remove part of the servient tenement and access necessary to accomplish the removal." *Id.* at 1-17.

occasionally calls for somewhat different considerations, if not different rules." *Id.* at xxvi.[4]

Moreover, since 1944 several jurisdictions have continued to distinguish between profits and easements. *See, e.g., McDonald v. Board of Mississippi Levee Commissioners,* 646 F.Supp. 449, 466-67 (N.D. Miss. 1986) (easement holder lacks right to participate in profits; easement is a privilege without profit), *aff'd,* 832 F.2d 901 (5th Cir. 1987); *Reeves v. Alabama Land Locators,* 514 So.2d 917, 918 (Ala. 1987) (right to hunt is a profit); *Alexander Dawson, Inc. v. Fling,* 396 P.2d 599, 601 (Col. 1964) (a profit is a greater interest than an easement); *Platt v. Pietras,* 382 So.2d 414, 417 (Fla. Dist. Ct. App. 1980) (right to take forage is a profit, not simply an easement); *Barton v. Gammell,* 238 S.E.2d 445, 447-48 n.4 (Ga. Ct. App. 1977) (an easement is incorporeal and can be abandoned but a profit is corporeal and cannot be abandoned); *Oakley Valley Stone, Inc. v. Alastra,* 715 P.2d 935, 937 (Idaho 1985) (easement lacks right to participate in profits derived from land; right to hunt and fish is a profit); *Cushing v. State,* 434 A.2d 486, 494-95 (Me. 1981) (right to cut and take timber is a profit, not a mere easement); *Evans v. Holloway Sand and Gravel, Inc.,* 308 N.W.2d 440, 443 (Mich. Ct. App. 1981) (a profit is a right that grows out of the soil while an easement is a privilege without profit); *Deseret Livestock Co. v. Sharp,* 259 P.2d 607, 610 (Utah 1953) (grazing right is a profit and more than an easement).

On the other hand, some cases, citing the RESTATEMENT OF PROPERTY (1944), have equated a profit with an easement. *See Gerhard v. Stephens,* 442 P.2d 692, 706

---

[4] Tentative Draft No. 1 has been approved. *66th Annual Meeting of the American Law Institute,* Proceedings 1989, at 279 (1990).

(1968) (easements and profits are indistinguishable). Some cases, like *Gadow v. Hunholz*, 160 Wis. 293, 151 N.W. 810 (1915), fudge the difference. *See First Nat'l Bank v. Konner*, 367 N.E.2d 1174, 1177 (Mass. 1977) (right to take sand for purpose of sanding a cranberry bog is a profit and, like an easement, can be abandoned); *Gray v. Handy*, 208 N.E.2d 829, 832 (Mass. 1965) (right to remove sand for purpose of cranberry culture on nearby bogs is a profit and of the same nature as an easement); *Wechsler v. People*, 537 N.Y.S.2d 900, 902 (N.Y. App. Div. 1989) (referring to hunting and fishing rights as an "affirmative easement"); *Jackson County v. Compton*, 609 P.2d 1293, 1295-97 (Or. 1980) (right to remove rock is a profit similar to an easement); *Willamette Quarries, Inc. v. Wodtli*, 761 P.2d 1356, 1360 (Or. Ct. App. 1988) (right to remove rock is a profit, and yet subject to rules of easements), *aff'd*, 781 P.2d 1196 (Or. 1989).

While the texts abound with quotations from cases describing a profit and distinguishing a profit from an easement, the following succinctly summarizes the similarities and dissimilarities between the two interests:

> Both a profit and an easement require the use or enjoyment of the land in which they exist. Both are nonpossessory interests. Both involve rights and privileges imposed on property in possession of another, and both involve rights against the members of the community in general. It is, however, the element of the participation in the soil and its produce that distinguishes a profit from an easement. An easement is a privilege to use and enjoy, but a profit involves a power of acquiring ownership of the physical substance of another's land by exercising the legal privileges of physical severance.

Hahner, *An Analysis of Profits a Prendre*, 25 OR. L. REV. 217, 217-18 (1946) (footnotes omitted).

The same text describes the property rationale for a profit to hunt and fish:

> [The privilege to hunt and fish on the land of another is a profit] even though the wild fowl or game are not reduced to possession by the owner and remain open to appropriation. When such birds or animals come upon the owner's land, his right of exclusive occupation of the land enables him to prevent an appropriation or to claim the benefit of an illegal appropriation by others. This interest, consisting of a right to prevent an appropriation, when surrendered to another, becomes a profit. Such a profit, thus, includes legal powers to acquire ownership by reducing the game to possession and is distinguished from the ordinary profit in that herein the owner of the servient estate does not have ownership but merely has the legal power to acquire it. A strict adherence to the definition of a profit as laid down by the cases and by textbook writers would exclude hunting and fishing privileges from classification as profits, but all authority is to the contrary.

*Id.* at 220-21 (footnotes omitted).[5]

---

[5] A profit "is some right growing out of the soil. It is [therefore] somewhat difficult to understand how, where one shoots a duck in the air while over the water, he is taking something from the soil, but undoubtedly the application of [the term profit] was made to [the right to hunt]." *St. Helen Shooting Club v. Mogle*, 207 N.W. 915, 917 (Mich. 1926). For another discussion on the right to hunt as a profit, see *Hanson v. Fergus Falls Nat'l Bank*, 65 N.W.2d 857 (Minn. 1954). The *Hanson* court relies partly on the definition of the special note to RESTATEMENT OF PROPERTY § 450 (1944). *Hanson*, 65 N.W.2d at 861, 863.

■

We conclude that a profit includes an easement, because a profit necessarily includes the right to go into and out of land, but the purpose of a profit far exceeds simple ingress and egress. Ingress and egress are permitted to take something from the land and take it away from the land. Thus, the holder of a profit possesses a far greater right than merely an easement. Unlike an easement, the value of a profit is not in the right to enter and leave the land. The value is in the right to take something from the land. Because the purpose of a profit is different from that of an easement and confers greater rights than does an easement, we conclude that a profit is not an easement.[6]

■

We therefore reverse the decision of the trial court without reaching the extent to which the proposed condominiums would interfere with the club's hunting and fishing rights. Because the club's hunting and fishing rights are more than an easement, application of the "thirty-year statute," sec. 893.33(2), Stats., to the facts before us means that those rights are not enforceable against the Figliuzzis. We remand with directions to enter judgment declaring that the Figliuzzis may develop the condominium without regard to the club's hunting and fishing rights.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[6] We reject the club's argument that its hunting and fishing rights are a "conservation easement" under sec. 700.40(1), Stats. Only governmental bodies and charitable organizations may hold such easements. Section 700.40(1)(b), Stats.