Vincent FIGLIUZZI, and Mary Jane Figliuzzi, Plaintiffs-Appellants,

v.

CARCAJOU SHOOTING CLUB OF LAKE KOSHKONONG, Defendant-Respondent-Petitioner.

Supreme Court

*No. 91–2426. Oral argument March 29, 1994.—Decided June 13, 1994.*

(Also reported in 516 N.W.2d 410.)

For the plaintiffs-appellants there was a brief by *Philip C. Ristow* and *Vance, Wilcox, Short & Ristow, S.C.,* Fort Atkinson and oral argument by *Philip C. Ristow.*

For the defendant-appellant-petitioner there were briefs by *Craig R. Johnson, Nicholas J. Loniello* and *Loniello & Johnson Law Office,* Madison and oral argument by *Craig R. Johnson.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Figliuzzi v. Carcajou Shooting Club of Lake Koshkonong,* 177 Wis. 2d 500, 502 N.W.2d 876 (Ct. App. 1993), reversing a declaratory judgment of the Jefferson County Circuit Court, Judge Jacqueline R. Erwin. The circuit court concluded that the Carcajou Shooting Club's property right to hunt and shoot on land owned by Vincent and Mary Jane Figliuzzi constituted an easement and that a development proposed by the Figliuzzis would unreasonably interfere with that easement. The first issue we address on review is whether the hunting and shooting rights are an ease-

ment for purposes of sec. 893.33(6), Stats.,[1] which provides an exception to sec. 893.33(2), (3). The latter statutes provide that a claim to an interest in real estate can only be maintained if the claim is based on an instrument that has been recorded with the register of deeds within the previous thirty years. We conclude that the hunting and fishing rights are an easement under sec. 893.33(6). Although in the past we have labeled such rights a "profit a prendre," under Wisconsin law there is no distinction between easements and profits relevant to recording the property interest. Thus, the sec. 893.33(6) provision governing easements encompasses the hunting and fishing rights at issue in this case.

The second issue we address on review is whether the Figliuzzis' proposed development constitutes an unreasonable interference with the Carcajou Shooting Club's (Carcajou's) rights. We agree with the circuit

---

[1] Section 893.33(6), Stats., provides:

> Actions to enforce easements, or covenants restricting the use of real estate, set forth in any recorded instrument shall not be barred by this section for a period of 40 years after the date of recording such instrument, and the timely recording of an instrument expressly referring to the easements or covenants or of notices pursuant to this section shall extend such time for 40-year periods from the recording.

For easements recorded in 1942, the year Carcajou recorded its hunting rights, a former sixty year period of limitation applies under sec. 893.33(8), Stats., which provides:

> If a period of limitation prescribed in s. 893.15(5), 1977 stats., has begun to run prior to July 1, 1980, an action shall be commenced within the period prescribed by s. 893.15, 1977 stats., or 40 years after July 1, 1980, whichever first terminates.

Section 893.15(5) prescribed a sixty year period of limitation for easements.

court and conclude that it does.[2] The Figliuzzis plan to build twenty-six condominiums in an area presently containing a single family residence. They plan to add a park and playground, as well as walking and horse-riding paths. The number of people on the property would greatly increase, as would car and boat traffic. The increase in the number of people, cars and boats on the property would reduce the number of wild animals that inhabit the property. The increase in the percentage of developed land would reduce the amount of land available for animal use. We agree with the circuit court's conclusion that such development would "virtually destroy" hunting and fishing activity on the Figliuzzis' property.

An 1896 warranty deed indicates that the Carcajou Shooting Club (Carcajou) purchased, for $7500, a parcel of land plus:

> the exclusive right to all fishing and shooting privileges which grantors now have upon, in and about and appurtenant to the premises now owned by grantors in Sections 16 and 21 . . . and the perpetual right to enter upon and fully and exclusively enjoy and use the same and for that purpose full rights of way and passage are hereby perpetually granted to grantee and its stockholders, hereby intending to convey to grantee and its stockholders the perpetual right to fish and shoot upon and over the lands now owned by grantors . . . and the waters adjacent thereto and to kill and take all fish and game thereon and therein.

[2] Because the court of appeals concluded that the thirty year recording requirement was applicable, the court of appeals did not address this issue.

Testimony at the bench trial and uncontroverted information provided at oral argument indicate that the hunting and fishing rights applied to approximately four hundred acres of land. Carcajou now owns approximately three hundred of those acres. Carcajou last recorded its claim to the hunting and fishing rights in 1942.

In 1987, Vincent and Mary Jane Figliuzzi purchased, from a successor to the original grantor, 42.28 acres of the land to which the earlier grant of hunting and fishing rights applies. The list of exceptions in the Figliuzzis' title insurance policy includes, "[c]ovenants, conditions and restrictions as contained in Warranty Deed . . . to Carcajou . . . dated June 2, 1896." The seller also informed Mr. Figliuzzi that Carcajou possessed some type of hunting rights. Presently one single family home is contained on the property and the Figliuzzis and one of their children live in this home. At one time the property also contained a barn and several small outbuildings.

The Figliuzzis now wish to build a four building, twenty-six unit condominium complex on the northeast corner of the property, an area farthest from the land Carcajou owns and close to several other residences. Each unit would have two bedrooms and a single car garage. An architect's plans indicate that the area around the condominiums would contain a manicured lawn and a playground, along with walking paths and bridle paths in the undeveloped areas. Boat slips and a deck would be built on the shoreline. The condominium owners would be prohibited from hunting on the property.

During the various hunting seasons in late fall and early winter, the nineteen Carcajou members hunt deer, pheasant, ducks and geese on their property and

the Figliuzzis' property. At trial, the Carcajou president indicated on maps the areas where the club hunts. In its decision, the circuit court explained that portions of these areas are included within the area that the Figliuzzis plan to develop. The Carcajou president asserted that the increased human activity and reduced cover for animals would interfere with Carcajou's hunting activities.

After obtaining the necessary government permits for the development, the Figliuzzis filed a declaratory judgment action in Jefferson County Circuit Court to ascertain how Carcajou's hunting and fishing rights affect their property. After a bench trial, the circuit court concluded that Carcajou's property interest is an easement that had been recorded within the applicable time limitations set forth in secs. 893.33(6) and (8), Stats. The circuit court then prohibited the proposed development because it determined that the development would unreasonably interfere with Carcajou's easement. The court based this conclusion on the evidence indicating that as a result of the development, there could be twenty-six times the current number of residents, visitors and vehicles on and about the property. Boat traffic would increase greatly. The Figliuzzis would add a park and playground, along with walking and bridle paths through the undeveloped land. The court determined that such development would "virtually destroy these forty-acres for hunting and fishing purposes."

The court of appeals reversed, concluding that Carcajou's hunting and fishing rights constitute a profit a prendre and that a profit is not an easement for purposes of sec. 893.33(6). *Figliuzzi,* 177 Wis. 2d at 511. The court reasoned that a profit confers greater rights than does an easement. While both generally allow the

holder of the interest to enter onto another's land, a profit includes the additional right to take something off the land. *Id.* The conclusion that Carcajou's interest was not an easement meant that the thirty year limitation on recording property interests, set forth in sec. 893.33(2), was applicable rather than the extended period for recording easements set forth in sec. 893.33(6). Carcajou's property interest had been recorded more than thirty years before the suit and hence the court of appeals' decision meant its rights were unenforceable. Therefore, the court of appeals did not reach the issue of whether the development was an unreasonable interference with Carcajou's rights.

■

The first issue we address on review is whether Carcajou's hunting and shooting rights constitute an easement under sec. 893.33(6), Stats. Statutory construction is a question of law that this court determines *de novo. State v. Olson,* 175 Wis. 2d 628, 633, 498 N.W.2d 661 (1993).

Section 893.33(2), Stats., sets forth the general rule that an action to enforce a claim to an interest in real property cannot be brought unless that interest has been recorded within the previous thirty years. The principal draftperson of the original version of this statute, sec. 330.15, Stats. 1941, states that "[t]he purpose of this legislation is to simplify and shorten the examination of record titles and otherwise reduce the legal costs incident to the sale of real property." Roy Tulane, *Title to Real Property—Thirty Year Limitation Statute,* 1942 Wis. L. Rev. 258, 259. The general rule is broadly applicable to property interests listed in sec. 893.33(5), plus "any claim of any nature, however, denominated."

Section 893.33(6), Stats., provides an exception to the general thirty year recording requirement, for easements and restrictive covenants. Although the exception for easements currently requires recording of the interest every forty years, it is undisputed that under sec. 893.33(8), the previous sixty year recording period applies to easements filed by 1942, the year Carcajou filed its interest. Carcajou's interest had been recorded within the sixty year time period prior to the suit and if that interest is an easement, Carcajou can enforce its interest. If Carcajou's property interest is not an easement, the thirty year limitation period is applicable and Carcajou cannot enforce its interest.

Because the term "easement" developed in the common law, we look to the common law to determine whether Carcajou's property interest is an easement under sec. 893.33(6). We conclude that Wisconsin common law has not squarely addressed this issue. In *Van Camp v. Menominee Enterprises, Inc.,* 68 Wis. 2d 332, 343, 228 N.W.2d 664 (1975), this court concluded that the right to hunt and fish "is a profit a prendre and, as such, an interest in real property." The court quoted several commentators who stated in essence that a profit is the right to acquire, by severance or removal from another's land, something that was part of the land such as timber, coal and oil, as well as the right to take game and fish. *Id.* at 343 (quotations omitted). The issue before the court was whether the right to hunt and fish was an interest in land for purposes of sec. 240.06, Stats, which at that time was the statute of frauds. Van Camp does not address whether there is a meaningful legal distinction between profits and easements.

Other Wisconsin cases have repeatedly defined an easement as "a liberty, privilege or advantage in land, without profit, and existing distinct from the ownership of the soil." *Schwartz v. Evangelical Deaconess Soc'y of Wisconsin,* 46 Wis. 2d 432, 437, 175 N.W.2d 225 (1970) (citing *Hazelton v. Putnam,* 3 Pin. 107 (1850)). However, the court was not determining, in any of these cases, whether a profit is different than an easement under the law. For instance, in *Schwartz,* the court was determining whether an agreement allowing apartment building occupants to park cars on a nearby property was a conveyance of an easement or a contract creating a license or contract rights. In *Hazelton,* the court was distinguishing easements and licenses. *See also Colson v. Salzman,* 272 Wis. 397, 401, 75 N.W.2d 421 (1956) (setting forth the definition above in a case deciding whether easement holders have riparian rights); *Union Falls Power Co. v. Marinette County,* 238 Wis. 134, 138, 298 N.W. 598 (1941) (setting forth the definition above in a case challenging the assessed value of flowage easements). Because this court was not asked to make a distinction between easements and profits in these cases, the mere definition of an easement, including the phrase "without profit," does not establish any legally relevant distinction between easements and profits.

Although this court has not decided whether there is a legal distinction between profits and easements, the court has at least suggested that there is no meaningful legal difference between the two. In *Gadow v. Hunholtz,* 160 Wis. 293, 297, 151 N.W. 810 (1915), this court discussed the right to cut and remove ice from a pond and stated:

> The right reserved is in its nature and kind a grant to take something which is a part of the soil or a product thereof and is denominated a right in the nature of an easement. (Citations omitted.)

As discussed above, *Van Camp* labeled this right a profit. *Gadow* and *Van Camp* together, then, suggest that the court sees no legal difference between an easement and a profit.

■

Because we can find no distinction between easements and profits relevant to recording the property interest, we hold that the sec. 893.33(6) exception for easements encompasses the hunting and fishing rights at issue in this case. In so concluding, we are largely persuaded by 5 *Restatement of Property,* § 450 Special Note (1944), which states:

> In this Restatement the term "easement" is so used as to include within its meaning the special meaning commonly expressed by the term "profit." . . . Interests of the sort here discussed under the title "Easements" have traditionally been discussed under the separate titles of "Easements" and "Profits." In phrasing the rules applicable to each of these interests it has been found, however, that in no case was there a rule applicable to one of these interests which was not also applicable to the other. This is not true with respect to English law. Under that law the interest designated as an easement can exist only as an appurtenance of a dominant tenement, while a profit may exist . . . in gross. From this essential difference largely came the differentiating designations which we have inherited. This difference does not exist in this country. . . . [S]ince the rules with respect to both "easements" and "profits" can be stated in identical terms, it is much more convenient to use a single term to designate both

interests rather than to use to the extent of annoying repetition the cumbrous phrase "easements and profits."

Comment g to § 450 adds:

An easement may include the privilege to acquire, by reduction to possession, ownership of some substances or things which, were it not for the easement, could be appropriated only by the possessor of the land subject to the easement. By virtue of his possession, a possessor of land occupies a favored position with respect to some things which are for the time being within the space comprehended by his possession, but which may be regarded as not yet having been reduced to possession. Included among such things are those wild birds and wild animals which have not been appropriated and which are in general open to appropriation. If such things come within the space possessed by a possessor of land, his right of exclusive occupation of the land enables him to prevent, for the time being, an appropriation by others. . . . An interest which privileges one who is not in possession of certain land to make appropriations on it which, were it not for the existence of the interest, the possessor of the land could prevent is an easement.

These comments in the Restatement clearly indicate that no meaningful legal distinction between profits and easements exists.[3]

---

[3] The *Restatement* presents "an orderly statement of the general common law of the United States." 1 *Restatement of Property,* Introduction at viii–ix (1936). We find the synthesis of common law in the *Restatement* consistent with Wisconsin common law, which at least suggested that there is no meaningful legal distinction between easements and profits.

At first glance, *Tentative Draft No. 1, Restatement (third) Property (Servitudes),* Introduction at xxvi (1989) suggests that the American Law Institute plans to revive use of the term "profits," as it states:

> The vocabulary used in this draft reflects the ... reclassification of servitude devices. The term servitude is used whenever the discussion applies to all servitudes. ... The term profit has been resurrected from the oblivion into which it was consigned by the 1944 Restatement because it describes a device that is used for a purpose quite different from the other servitude devices, and occasionally calls for somewhat different considerations, if not different rules. Profits, for example, are difficult to acquire by prescription in jurisdictions requiring payment of taxes to establish titles by adverse possession, while easements are not.

Even though the drafts of the new Restatement appear to act as a bellwether reviving the term "profit," they create virtually no meaningful legal distinction between profits and easements. Each section in *Tentative Draft Nos. 1, 2, and 3* refer to "servitudes" and thus the rules set forth in each section are equally applicable to easements and profits.[4] *Tentative Draft No. 4* contains provisions that are not applicable to all servitudes, but are applicable to both easements and profits. A comment following § 2.16, contained in *Tentative Draft No. 3* (1993), restates the same concern regarding prescriptive profits set forth in the introductory mate-

---

[4] *Tentative Draft Nos. 1 and 2* have been approved. *66th Annual Meeting, The American Law Institute, Proceedings 1989 279 (1990); 68th Annual Meeting, The American Law Institute, Proceedings* 1991 151 (1992).

rial quoted above.[5] However, § 2.16, which governs creation by prescription, uses the term "servitude" and the comment states that profits can generally be acquired by prescription. We could find no other discussion pointing to a legal difference between easements and profits that would be relevant to recording the property interest.

Our decision is consistent with the position taken by leading commentators on the law of property, who state, in accordance with the 1944 Restatement, that there is no legally relevant distinction between easements and profits. *See* John W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land,* ¶ 1.04[1] (1988) (stating that "[b]ecause profits necessarily include the right to enter the servient tenement, they are governed by the same general legal principles that apply to easements"); 3 *Powell on Real Property* ¶ 404[1] (Patrick J. Rohan ed. 1993) (stating that the treatise follows the Restatement approach of using the term "easement" to encompass both easements and profits, as there is no significant distinction between the two). Both commentators give credence to the Restatement position but certainly could have done otherwise had they found the Restatement position contrary to prevailing property law.

We further note that while courts in other states are not unanimous in the conclusion that there is no legal distinction between profits and easements, numerous courts have blurred the distinction between

---

[5] The comment states that a profit can be obtained by prescription but when the use is sufficient to constitute adverse possession in states where taxes must be paid to acquire property by adverse possession, claimants are not allowed to avoid taxes merely by claiming that they have a prescriptive profit rather than adverse possession of the property.

the two. *See Gerhard v. Stephens,* 442 P.2d 692, 706 (Cal. 1968) (for purposes of determining whether the interest can be abandoned, easements and profits are "indistinguishable"); *First Nat'l Bank of Boston v. Konner,* 367 N.E.2d 1174 (Mass. 1977) (a profit, like an easement, can be abandoned); *Gray v. Handy,* 208 N.E.2d 829, 832 (Mass. 1965) (an appurtenant profit to remove sand is "of the same nature as an easement"); *Evans v. Holloway Sand and Gravel, Inc.,* 308 N.W.2d 440, 443 (Mich. App. 1981) (failure of trial judge to distinguish between easement in gross and profit is "immaterial because of the similar nature of these property interests"); *Moore v. Schultz,* 91 A.2d 514, 516 (N.J. Super. Ct. App. Div. 1952), *aff'd per curiam,* 96 A.2d 732 (1953) (any legal difference between a profit in gross and an easement in gross is "microscopic"); *Council v. Sanderlin,* 111 S.E. 365, 367 (N.C. 1922) (profit held by reason of holding other real estate is regarded as an appurtenant easement); *Willamette Quarries, Inc. v. Wodtli,* 761 P.2d 1356, 1360 (Ore. 1988), *aff'd,* 781 P.2d 1196 (Ore. 1989) (profits are "similar to and subject to the same rules as easements").

Because we conclude that the hunting and fishing rights are an easement under sec. 893.33(6), the sixty year period for recording an interest in property is applicable and Carcajou can still assert its property rights. Therefore, we move to the second issue on review—whether the Figliuzzis' proposed development constitutes an unreasonable interference with Carcajou's easement. The court of appeals did not reach this issue because it concluded that the sec. 893.33(2) thirty year recording period applied and Carcajou could no longer assert its interest.

An owner of property subject to an easement may make all proper use of the land, including the right to make changes in or upon it, but the owner may not unreasonably interfere with the use by the easement holder.[6] *Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977) (citing *Wis. Tel. Co. v. Reynolds,* 2 Wis. 2d 649, 652, 87 N.W.2d 285 (1958)). The servient estate owner, here the Figliuzzis, has a duty to protect the easement holder's right to use the easement for the purpose for which it was created. *Hunter,* 78 Wis. 2d at 344.

The circuit court found that the proposed development was an unreasonable interference with Carcajou's hunting and shooting rights. The question of unreasonable interference is a mixed question of fact and law. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983) (determination of whether con-

---

[6] The Figliuzzis urge this court to adopt a different approach for analyzing the extent to which hunting rights restrict the servient estate holder's use of property. Rather than the "unreasonable interference" analysis, Figliuzzis ask the court to adopt the following approach, set forth in *Mikesh v. Peters,* 284 N.W.2d 215, 219 (Iowa 1979):

> [H]unting rights, do not limit the landowner in his or her use of the affected land absent an express covenant to the contrary or a malicious bad faith destruction of the clearly designated object (i.e., game or its habitat) of the right.

We decline to adopt this approach. We have concluded that there is no legal distinction between profits and easements relevant to recording the property interest. Nor do we see a distinction relevant to determining whether the servient estate owner has interfered with the property right. Therefore, the "unreasonable interference" analysis applies to the hunting and fishing rights involved in this case.

tract clause is unreasonable and therefore invalid involves determinations of fact and law). The circuit court must make a factual determination as to what the holder of the servient estate plans to do with the land and a legal determination of whether the changes to the land constitute an unreasonable interference with the easement. This court will uphold the factual determinations underlying the legal conclusion unless they are clearly erroneous. *Wassenaar,* 111 Wis. 2d at 525.[7]

We conclude that the circuit court's findings of fact are not clearly erroneous. The testimony and exhibits at trial indicate that the Figliuzzis propose to build a twenty-six unit condominium on a forty acre property that presently contains only a single residence occupied by three people. Each unit will contain a one-car garage. The architectural plans also indicate that the Figliuzzis plan to add bridle paths for horses and walking paths for pedestrians in the undeveloped part of the forty acres.[8] They plan to build a park and playground in an area that is apparently at present merely mowed grass. The Figliuzzis will add boat slips on the shoreline. Portions of the area on which Carcajou hunts are included within the area the Figliuzzis plan to develop.

---

[7] *Wassenaar* actually phrases the standard as whether the finding is "contrary to the great weight and clear preponderance of the evidence." We now apply the "clearly erroneous" standard, but the two standards are the same. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). *See also* sec. 805.17(2), Stats.

[8] Mr. Figliuzzi stated he was not certain he would build these paths, but his credibility was for the circuit court to determine. The circuit court found that the paths would be built.

Whether the facts fulfill the legal standard of unreasonable interference is a question of law. Normally this court does not defer to a circuit court's determination of a question of law. *Wassenaar,* 111 Wis. 2d at 525. However, because a circuit court's conclusion on reasonableness is intertwined with the factual findings supporting that conclusion, this court gives weight to a circuit court's finding of reasonableness. *Id.*

We sustain the circuit court's conclusion that the proposed development would unreasonably interfere with Carcajou's hunting and fishing rights. If the occupancy averages only two persons per unit, an additional forty-nine people would reside on the property. The average number of occupants would likely be greater than two per unit—the condominiums have two bedrooms and the architectural plans show a playground on the property, making it likely that there would be at least some families with children. Car traffic would likely increase twenty-six fold and boat traffic would greatly increase as well. Movement of people on the property would increase greatly, due to the greater number of residents and the opportunities for outdoor recreation on the walking paths, bridle paths, park and playground. The increase in the number of people who would be moving about the property would make hunting more difficult because the hunters would face increased risk of inadvertently shooting a person. The increase in the number of people, cars and boats on the property would reduce the number of wild animals that inhabit the property. The increase in the percentage of developed land would reduce the amount of land available for animal use. Because the development would

constitute an unreasonable interference, the circuit court properly prohibited it.

*By the Court.*—Decision reversed.