COURT OF APPEALS
DECISION
DATED AND FILED

May 11, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP925**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CV139**

**IN COURT OF APPEALS
DISTRICT III**

JAMES COBB AND JUDITH COBB,

PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,

V.

GARY A. KING,

DEFENDANT-RESPONDENT-CROSS-APPELLANT.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Oconto County:  JAY N. CONLEY, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  This appeal and cross-appeal involve a dispute between two adjoining landowners—James and Judith Cobb on one side, and

Gary King on the other. The Cobbs appeal the circuit court's grant of summary judgment to King enforcing his use of an ingress and egress easement over the Cobbs' property. King cross-appeals the court's denial, without an evidentiary hearing, of his motion to enforce a second mediation agreement between the parties.

¶2 We conclude the circuit court properly determined that the easement conveyed a freely transferable interest to King that ran with the land and was not personal to King's predecessors in title. We further conclude the court correctly determined that the second mediation agreement was unenforceable because it lacked material terms and was therefore too indefinite to be enforced. Finally, we conclude the court did not err in denying King's request to conduct an evidentiary hearing regarding the terms of the second mediation agreement because no extrinsic evidence could be used to supplement the agreement. We therefore affirm in all respects.

## BACKGROUND

¶3 In May 1969, Herbert and Jean Hessil, King's predecessors in title, acquired their property as joint tenants. In October 1978, Barbara Rierdon and others (collectively "Rierdon"), predecessors in title to the Cobbs, granted a roadway easement over their property to the Hessils. The easement was recorded with the Oconto County Register of Deeds. As relevant here, the easement provides that the grantors—i.e., Rierdon—"grant, convey, give over and allow to HERBERT HESSIL and JEAN HESSIL, his wife, a right of ingress and egress for the purpose of vehicular traffic only to the following described property," which, again, is part of the present Cobb property.

2

¶4 In October 1981, Rierdon sold the real estate by land contract to the Cobbs. The land contract's legal description of the sold property included language that the sale was "SUBJECT to an easement …." In August 1987, Rierdon conveyed the property to the Cobbs by a warranty deed, which again indicated that the property was subject to an easement. The Hessils retained ownership of the adjoining parcel.

¶5 In May 2009, Wayne Hessil and others conveyed the Hessil property to King and Melissa Hermes, as tenants in common, with no mention of the easement. In September 2011, Hermes executed a quitclaim deed to King, again with no mention of the easement.

¶6 The Cobbs sued King, seeking a declaration that the easement benefitting King's property was personal to the Hessils as King's predecessors in title and that King had no rights to the easement, and that King be enjoined from using the easement. King filed an answer and sought a judgment declaring that the easement ran with the land and was freely transferable.

¶7 The parties mediated their dispute on November 27, 2018. The mediation resulted in a signed agreement ("Mediation Agreement 1") under which King agreed to sell his property to the Cobbs. Problems arose, however, and the terms of Mediation Agreement 1 were not fulfilled as several material terms were not agreed upon.

¶8 King then filed a motion for summary judgment to enforce his right to use the easement. Thereafter, the Cobbs filed a motion to enforce Mediation Agreement 1 by requiring King to sell his property to them. King objected to the enforcement of Mediation Agreement 1, arguing that it was indefinite because the basic terms of the proposed real estate transaction were uncertain.

¶9     The circuit court held a hearing and ordered the parties to participate in a second mediation, which resulted in a second mediation agreement ("Mediation Agreement 2"). That agreement provided that: (1) the parties would have an "'L' shaped parcel that is adjacent to Lot 1 of CSM 199 (i.e., the 'L' shaped parcel is located northeast of Lot 1 of CSM 199)" surveyed; (2) the Cobbs would quitclaim to King the surveyed parcel; and (3) both parties would thereafter release all easement rights in their respective parcels. King agreed to pay the Cobbs $10,250 upon receipt of the quitclaim deed and to dismiss this lawsuit. King paid the $10,250 into his attorney's trust account consistent with the terms of Mediation Agreement 2.

¶10    Mediation Agreement 2 further provided: "The parties agree and acknowledge that additional documents subsequent to this Agreement will need to be drafted by counsel and agree to execute said documents after review and approval by their respective counsel." Meanwhile, the Cobbs' attorney held a quitclaim deed signed by the Cobbs, but it contained no legal description. Subsequently, the terms of Mediation Agreement 2 were not fulfilled due to the Cobbs' refusal to abide by the terms of that agreement.

¶11    King then moved the circuit court to enforce Mediation Agreement 2. The court scheduled a hearing at which the Cobbs appeared one-half hour late. At the hearing, the court granted the request of the Cobbs' attorney to withdraw as their counsel. The court further granted a default judgment against the Cobbs and ordered that Mediation Agreement 2 be enforced.

¶12    The Cobbs, through their new attorney, filed a motion to vacate the default judgment. Following a hearing, the circuit court granted the Cobbs' motion to reopen the case. The court also determined that Mediation Agreement 2

was unenforceable because the legal description of the "L" shaped parcel was reasonably in dispute. In support, the court cited *Paul R. Ponfil Trust v. Charmoli Holdings, LLC*, 2019 WI App 56, 389 Wis. 2d 88, 935 N.W.2d 308, and it suggested that Mediation Agreement 2 constituted an "agreement to agree" both because it contained no meaningful description of the property and because it required a survey and further documents to implement the agreement.

¶13 King submitted a letter to the circuit court requesting, first, reconsideration of its decision declaring Mediation Agreement 2 invalid. King also requested an evidentiary hearing on the legal description of the "L" shaped parcel, arguing that *Ponfil Trust* was distinguishable from the present case. The court issued a written decision and order that, in relevant part, granted the Cobbs' motion to vacate the default judgment, denied the Cobbs' motion to enforce Mediation Agreement 1, denied King's motion to enforce Mediation Agreement 2, and granted King's motion for summary judgment. As relevant here, the court found that "both sides acted, in bad faith, in the mediation attempts," and that Mediation Agreement 2 was unenforceable due to a lack of material terms. The court specifically noted that Mediation Agreement 2 referenced, in the court's words, "an L shaped parcel which has not been surveyed and which is susceptible to different interpretations as demonstrated by [the Cobbs'] counsel in his Affidavit."

¶14 As to King's summary judgment motion, the circuit court concluded that, contrary to the Cobbs' argument, under WIS. STAT. § 706.10(3) (2019-20),[1]

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

words of inheritance, such as "heirs and assigns," were not necessary to conclude that King's easement ran with the land and was not personal to King's predecessors in title, the Hessils. The court further concluded that the Hessils conveyed the easement to King because that easement neither expressly nor by implication suggested otherwise, and the easement was appurtenant to the property as it served the dominant estate. The Cobbs now appeal the grant of summary judgment in favor of King, and King cross-appeals the denial of his motion to enforce Mediation Agreement 2.

## DISCUSSION

### I. The Cobbs' appeal of summary judgment

¶15    This court reviews a summary judgment decision de novo, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶16    The Cobbs argue that the circuit court erred in three ways by granting King's motion for summary judgment. Each of the Cobbs' arguments is premised on the notion that the court misapplied WIS. STAT. § 706.10(3), which states: "In conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance."

¶17    First, the Cobbs argue the circuit court erred in determining that the language of WIS. STAT. § 706.10(3), which pertains to conveyances of land,

applies to easements. Second, the Cobbs contend that the court erred in its interpretation of the second clause of that statute to mean that "because the deed King received for the Hessil land did not negate the notion that the easement was personal to the Hessils, the easement somehow passed to their assigns." Third and finally, the Cobbs contend that even if § 706.10(3) applied, it still contained the "express intent to limit the grant that … § 706.10(3) requires" because the original easement specifically referred to the Hessils and no one else.

¶18 As to the first issue, King correctly argues that ***Borek Cranberry Marsh, Inc. v. Jackson County***, 2010 WI 95, 328 Wis. 2d 613, 785 N.W.2d 615, controls our decision of whether WIS. STAT. § 706.10(3) applies to easements. In ***Borek***, Carl Nemitz purchased an easement from Jackson County granting him water flowage and sand removal rights to county land that was adjacent to his property for the purpose of cranberry cultivation of his marsh. ***Borek***, 328 Wis. 2d 613, ¶4. The water flowage rights were granted to "Carl Nemitz, his heirs, and assigns," while the sand removal rights were granted to "the Grantee," whom the deed identified as "Carl Nemitz." ***Id.***, ¶¶5, 30. Nemitz later transferred his land, along with his flowage and sand removal rights, to the Boreks. ***Id.***, ¶6. The Boreks later transferred the land and their interests in the flowage and sand removal rights to BCM. ***Id.*** On appeal, the supreme court held that the sand removal rights conveyed in the easement between the county and Nemitz were not personal to Nemitz, and thus were fully transferable to the Boreks and then to BCM. ***Id.***, ¶13.

¶19 In addressing that issue, the ***Borek*** court expressly held that WIS. STAT. § 706.10(3) applies to easements. After reviewing the statute's history, the court stated:

7

> We were unable to find any evidence, textual or extra-textual, that [various revisions to the statute] reflected a legislative intent to change the meaning of the statute. Rather, the changes appear merely stylistic. For example, the legislature changed the phrase, "every grant of lands or any interest therein," to simply "conveyance." A "conveyance" is defined as a written instrument evidencing a transaction governed by Chapter 706, which would include both a grant of land and the conveyance of an interest in land. *See* § 706.01(3).
>
> Unlike the dissent, we find the statute to be sufficiently clear that it applies to easements. *See* Dissent, ¶¶57-63. We see clues in the second clause of the statute, which states, "every conveyance shall pass all the estate or interest of the grantor." The conjunctive "or" means that some conveyances contemplated by the statute will include an estate, while some may include only interests in the land. The pre-1969 version of the statute further makes clear that the current statute's use of "conveyance" is meant to be shorthand for "every grant of lands or any interest therein." And if there were any doubt, courts in other states with similar statutes, including the New York statute upon which ours was based, have construed this language to apply to easements as well as conveyances of land.

*Borek*, 328 Wis. 2d 613, ¶¶20-21.

¶20    The ***Borek*** decision made clear that WIS. STAT. § 706.10(3) applies to easements, thus precluding the Cobbs' argument that the statute does not apply in this case. *See **id.***, ¶¶21-22. We are bound by this controlling precedent.

¶21    The Cobbs next maintain that "[t]ransferring an easement to the Hessils alone, without words extending it to others, means the easement is personal." This argument is also precluded by ***Borek***. The ***Borek*** court addressed the county's argument that the difference in language between the grant of the water flowage and sand removal rights created a necessary implication that the sand removal rights were nontransferable. *Id.*, ¶28. The county maintained that the omission of the words "heirs and assigns" in the sand removal grant—in

contrast to the inclusion of that language in the water flowage grant—constituted express language, or at least gave rise to a necessary implication, that the original parties intended the sand removal rights to be personal to Nemitz and nontransferable. *Id.*, ¶¶28, 33. The *Borek* court rejected this argument, concluding that under WIS. STAT. § 706.10(3), the easement conveyed a fully transferable interest in both the water flowage and sand removal rights. *Id.*, ¶33.

¶22 Third, the Cobbs contend that even if the circuit court correctly applied WIS. STAT. § 706.10(3), the fact that the easement names the Hessils, and no one else, demonstrates an express intent consistent with § 706.10(3) that the easement was personal and not transferable to King. We disagree. *Borek* considered the grant of water flowage rights to "Carl Nemitz, his heirs, and assigns" and the grant of sand removal rights to "the Grantee" to be identical, and then held that each grant conveyed a freely transferable interest, which was later acquired by the Boreks. *Borek*, 328 Wis. 2d 613, ¶30. The easement here, as in *Borek*, does not contain an express statement or a necessary implication that only a limited, non-transferable right was conveyed, as would be required of a non-transferable easement. *Id.*, ¶37. The court therefore correctly determined that the easement conveyed a fully transferable interest to King.

¶23 Finally, the Cobbs argue that *Borek* is distinguishable because that case involved sand removal rights and a *profit a prendre*,[2] not an easement. Again, we disagree. There is no meaningful distinction between profits and

---

[2] A *profit a prendre* is defined as "a right, privilege, or interest that allows one to use the soil or products (as fish and game) of another's property." *Profit a prendre*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/legal/profit%20a%20prendre (last visited May 7, 2021).

easements. *See **Figliuzzi v. Carcajou Shooting Club***, 184 Wis. 2d 572, 582-85, 516 N.W.2d 410 (1994). Specifically, ***Figliuzzi*** held that there is "no distinction between easements and profits relevant to recording the property interest." ***Id.*** at 583. We therefore reject the Cobbs' argument that ***Borek*** is distinguishable. Instead, for the reasons explained above, ***Borek*** is controlling and compels a conclusion that the circuit court properly granted King summary judgment.

## II. King's cross-appeal regarding Mediation Agreement 2

### A. Enforcement of Mediation Agreement 2

¶24    In his cross-appeal, King first argues that the circuit court erred by failing to enforce Mediation Agreement 2. King contends that the court erred in concluding that Mediation Agreement 2 was merely an "agreement to agree," as in ***Ponfil Trust***, because the parties clearly had an agreement in which all parts were confirmed and definite. King further contends that the "term 'L' shaped parcel" was not so uncertain as to render Mediation Agreement 2 unenforceable. If it is clear that the parties intended to agree, King argues that we "should not frustrate the efforts of the parties and attach a 'sufficiently definite meaning' to the express terms used in [Mediation Agreement 2].

¶25    We reject King's argument that the circuit court erred by failing to enforce Mediation Agreement 2, as its decision was plainly correct under ***Ponfil Trust***. In ***Ponfil Trust***, the parties' mediation agreement required the transfer of real estate in exchange for money and also required that the parties "agree[d] to sign a separate substantive agreement covering such things as liability & indemnity in usual form." ***Ponfil Tr.***, 389 Wis. 2d 88, ¶¶3, 27. We held that the terms in the agreement "including liability and indemnity associated with the transfer of property … were to be agreed upon with a separate substantive

agreement. These terms were never agreed to in writing, rendering this provision incapable of enforcement for lack of definiteness." *Id.*, ¶27. Elsewhere, we have stated that if the parties "understand that the execution of a formal document shall be a prerequisite to their being bound[,] there is no contract until the document is executed." *American Nat'l Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215, ¶19, 277 Wis. 2d 430, 689 N.W.2d 922 (citation omitted).

¶26 Here, the parties did not clearly indicate in Mediation Agreement 2 exactly where the property to be surveyed and deeded was located, nor the size of the property. In fact, the Cobbs' attorney submitted an affidavit using King's map to depict a variety of possible locations for an "L" shaped configuration, which demonstrated why describing the property as an "L" shaped parcel was too indefinite to enforce the agreement. How a surveyor would determine what is to be deeded is not specified. While it is clear what Mediation Agreement 2 means—and it is therefore not ambiguous—its terms regarding the size and location of the "L" shaped property are not defined, and therefore they are indefinite. The deal cannot be consummated based upon that document alone.

¶27 Ambiguity arises when contractual language is reasonably susceptible to more than one meaning. *MS Real Estate Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶37, 362 Wis. 2d 258, 864 N.W.2d 83. In contrast, contractual terms are indefinite when they are "so vague or indefinite that that agreement is not 'definite as to the parties' basic commitments and obligations,' thus preventing the formation of a contract." *Ehlinger v. Hauser*, 2008 WI App 123, ¶28, 313 Wis. 2d 718, 758 N.W.2d 476, *aff'd on other grounds*, 2010 WI 54, 325 Wis. 2d 287, 785 N.W.2d 328. Here, Mediation Agreement 2 is indefinite, but not ambiguous. King's argument to the contrary is incorrect, as we explain in greater detail below.

¶28   Additionally, by declaring the survey "necessary to complete the transaction," the parties recognized in Mediation Agreement 2 that a survey was essential.  Our supreme court has held that the fact "that a survey was deemed necessary by both parties to the contract indicates strongly that the area involved was not sufficiently definite to form the basis of an oral contract which could be enforced by specific performance." *Fontaine v. Riley*, 189 Wis. 226, 236, 207 N.W. 256 (1926).  As in *Fontaine*, the necessary survey to be completed as part of Mediation Agreement 2 indicates that the area involved is not sufficiently definite.  The circuit court therefore correctly concluded that the agreement was unenforceable.

### B.  Hearing on the enforcement of Mediation Agreement 2

¶29   King next contends that because the circuit court questioned the meaning of the "L" shaped parcel used in Mediation Agreement 2, it erred by construing that term as indefinite rather than ambiguous.  As evidenced by our analysis above, *see supra* ¶¶25-27, a contract can be ambiguous without being indefinite, and if it is ambiguous—i.e., fairly susceptible to more than one construction—the court may then look to extrinsic evidence to help construe its meaning.  *Ehlinger v. Hauser*, 2010 WI 54, ¶56, 325 Wis. 2d 287, 785 N.W.2d 328.  King argues that the court mistakenly found the agreement was indefinite merely because the "L" shaped parcel had "not been surveyed" and "is susceptible to different interpretations as demonstrated by [the Cobbs'] counsel in his Affidavit."

¶30   King contends extrinsic evidence shows that the parties knew where the "L" shaped parcel would be located.  He asserts the Cobbs acknowledged they were aware that the parcel they were selling included waterfront property because

they expressed concern that the property was undervalued. King argues that this acknowledgment suggests the Cobbs understood that "the easternmost portion of the 'L' shaped parcel is waterfront property." King also contends it is "apparent" that he needs access to a public roadway to avoid landlocking his property, which suggests that the northernmost part of the "L" was to connect with the public road. Based on this extrinsic evidence already in the record, King asserts the circuit court should have held an evidentiary hearing to clarify the exact location that the parties intended.

¶31     King's argument in this regard misses the dispositive legal point. As the Cobbs correctly note, a mediation agreement may not be orally supplemented. *See* WIS. STAT. § 807.05; *see also **Affordable Erecting, Inc. v. Neosho Trompler, Inc.***, 2005 WI App 189, ¶¶13, 16, 286 Wis. 2d 403, 703 N.W.2d 737 ("Because … § 807.05 does not provide for a party to subscribe to an agreement through verbal assurances or general conduct, the mediated agreement … is deficient."). If the meaning of the terms in Mediation Agreement 2 were ambiguous, a hearing may help to provide extrinsic evidence of the parties' intent. As discussed above, however, Mediation Agreement 2 is indefinite, but not ambiguous. Mediation Agreement 2 is not ambiguous because it clearly shows the parties intended to deed King the "L" shaped parcel. It is indefinite, however, because it did not define the "L" shaped parcel's size and location. That deficiency could not be remedied with oral testimony.

¶32     Additionally, King argues the circuit court erred by declining to enforce Mediation Agreement 2 by relying on an affidavit attached to a reply brief in support of the Cobbs' motion to vacate. King does not show what, if any, new information was provided in that affidavit or how it affected the court's decision.

We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶33 Finally, King argues that the circuit court did not properly exercise its discretion by allowing the Cobbs to avoid the terms of the settlement agreement. A circuit court is given discretion on whether to grant relief from a stipulation pursuant to WIS. STAT. § 806.07, and Mediation Agreement 2 was essentially a stipulation. *See Phone Partners Ltd. P'ship v. C.F. Commc'ns Corp.*, 196 Wis. 2d 702, 709, 542 N.W.2d 159 (Ct. App. 1995). King contends that the court erroneously exercised its discretion in relying upon the parties' unsubstantiated acts of bad faith regarding the agreement as a basis for the court to avoid enforcing the agreement. Without more, King argues this reliance was not a proper exercise of discretion. We disagree with King's contention, as he fails to show how the court's finding regarding bad faith was clearly erroneous. Absent such a showing, the court properly exercised its discretion by refusing to enforce Mediation Agreement 2's terms.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14