WISCONSIN TELEPHONE COMPANY, Respondent, vs. REYNOLDS, Appellant.

*December 5, 1957—January 7, 1958.*

650

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *Alan M. Clack* of counsel, all of Milwaukee, and oral argument by *Mr. Clack.*

For the respondent there was a brief by *Love, Davis, McGraw & Frey* of Waukesha, and oral argument by *Robert T. McGraw.*

STEINLE, J.   Under right of an easement the plaintiff, Wisconsin Telephone Company, maintained an underground cable inside a conduit on a privately owned tract of land located south of the Bluemound road and east of North 114th street in the city of Wauwatosa. About three weeks prior to September 17, 1953, the plaintiff was notified that the owner intended to have the grade of the land lowered. Shortly after receipt of such notice the plaintiff caused four or five stakes to be placed on the land indicating the location of the cable. The stakes contained markings showing that the depth of the cable varied between five and seven feet below the course as staked out. The defendant, Francis Reynolds, was engaged by the owner to perform the grading service. About three days before September 17, 1953, a representative of the plaintiff company informed the defendant's power-shovel operator that the company wanted to be notified when the

grading operation reached within 10 feet of the cable, and advised that the company would then send its crew of underground workmen to assist in the excavation and would relocate the cable at a lower level. Between 7:30 and 7:45 a. m. on September 17, 1953, the plaintiff received a telephone call from the defendant advising that the defendant's grading operations had come to within 10 feet of the cable. The plaintiff instructed the defendant not to go any closer to the cable, and stated that its underground crew would be on hand shortly. The plaintiff's crew of workmen arrived at about 10 a. m. Between the time of said telephone call and the arrival of plaintiff's workmen, the defendant's power-shovel operator continued to remove earth in the close vicinity of the cable. During the course of such operation, the cable was broken by the power shovel. The defendant's employees had excavated 30 feet of the cable before the break occurred. There is evidence of record that no authority was given by the plaintiff to the defendant to extract the cable from its position. There is also evidence to the effect that the defendant's power-shovel operator knew that the procedure was dangerous, and that he was taking a calculated risk in proceeding to dig out the cable without direction or supervision from plaintiff's employees. The power-shovel operator testified that he continued to excavate in the proximity of the cable because he wanted to favor both the plaintiff and his employer. As a result of the breaking of the cable by the defendant, it was necessary to splice 75 feet of the cable. Only 15 feet of splicing would have been required in the relocation of the cable had it not been broken. The cost of repairs as indicated by plaintiff's accounting records, was $389.06.

The defendant seeks reversal of the judgment and dismissal of the complaint on grounds principally (a) that the plaintiff, as an easement holder, had no right to supervise the grading of the lot; (b) that there was no evidence indicating that the

grading was not done in a manner conforming to customary procedure; (c) that the plaintiff was not damaged; (d) that proof of the claimed damages was insufficient to support the judgment.

With reference to the first two of said assignments of error, the defendant challenges the trial court's finding of fact wherein it was determined: "That contrary to the plaintiff's instructions and without the authorization or permission of the plaintiff and without waiting for the plaintiff's supervision and for the arrival of its underground-cable crew the defendant continued to excavate and grade said area and in the course of operating a power shovel the defendant's agent and employee carelessly and negligently severed, broke, and damaged the said underground conduit and cable belonging to the plaintiff."

The defendant submits that plaintiff's easement in no way restricted the property owner, or the men engaged to work for him, with respect to altering the surface of the property.

While the owner of property subject to an easement may make all proper use of his land including the right to make changes in or upon it, nevertheless such owner may not unreasonably interfere with the use by the easement holder.

In *Wallis v. First Nat. Bank* (1914), 155 Wis. 306, 318, 143 N. W. 670, it was said:

"The owner of property subject to an easement has the right to make incidental changes in the real estate over which the easement extends, provided there is no substantial impairment of the right granted."

In the instant case the property owner and his contractor were entitled to grade the land, but they could not with impunity damage the plaintiff's personal property which had been placed in the land pursuant to the easement.

The defendant also maintains that negligence on his part was not established, and that the record is barren of evidence

indicating that the plaintiff or any other person in undertaking to excavate the cable, would have taken measures different from those employed by the defendant's workmen. We are of the opinion that the plaintiff's request to the defendant that it be notified when the grading reached to within 10 feet of the cable, was reasonable under the circumstances. It was the intention of the plaintiff to have its own crew handle the operation of the excavation of the cable when the grading work progressed to such a stage. The defendant's power-shovel operator knew of the attendant danger of breaking the cable when proceeding without direction or assistance from the plaintiff. The evidence indicates that he never before excavated a telephone cable without the supervision of the company that owned the cable. He took the calculated risk in order not to be held up on the job. By virtue of such conduct there was a trespass upon the plaintiff's personal property. Restatement, 1 Torts, pp. 555, 556, sec. 218, declares in part:

"One who without a consensual or other privilege to do so, uses or otherwise intentionally intermeddles with a chattel which is in the possession of another is liable for a trespass to such person if, but only if,

"(a) the chattel is impaired as to its condition, quality, or value, or

"(b) the possessor is deprived of the use of the chattel for a substantial time, or

"(c) . . . harm is caused to some . . . thing in which the possessor has a legally protected interest."

In the comment of the section of Restatement on Torts just above quoted at note *b* (p. 557) it is pointed out that:

"If . . . the actor intentionally uses or otherwise intentionally intermeddles with another's chattel, he is subject to liability under the rule stated in this section for harm accidentally caused thereto in the course of such user as well as for harm negligently caused, as where one without the posses-

sor's consent tinkers with the latter's radio and thereby accidentally or negligently harms it. Under rules stated in volumes 2 and 3 of the Restatement of this subject, the actor may be subject to liability for harm resulting from an intermeddling which, though not intentional, was negligent, reckless, or the result of conduct undertaken at his peril."

While it may be considered that there was no interference with plaintiff's easement during the time that the defendant's employee was excavating in the area of land above the cable, it is manifest that by excavating the cable itself (30 feet having been excavated before the breaking) there was an intermeddling with plaintiff's personal property, and that the rules above quoted apply. Even though negligence had not been established, it is clear that a trespass was perpetrated. Manifestly the intermeddling by the defendant's employees was intentional. Notwithstanding that the break occurred because of accident as claimed by the defendant's employee, the defendant is bound to respond to the plaintiff for the damages which ensued.

There is an abundance of evidence to the effect that it was necessary to repair the broken cable in order to provide service for customers in the vicinity. The defendant's crew was required to splice in 75 feet of emergency cable because of the break. Before relocating the cable it was necessary to dig a trench and place the repaired section of the cable in the trench temporarily so as to enable the defendant to continue with his grading operation. The amount of the damages reflected in the judgment, viz., $389.06, did not include any cost of expenditure for the eventual permanent relocation of the cable.

At the trial Sven J. Magnusson, who is employed as an accountant by the plaintiff and who is also a certified public accountant, presented the plaintiff's accounting records relating to the cost of the repairs of the cable, and testified with respect to the same. The records were in form and method

as required by the federal communications commission and the public service commission as to detail for billing and indicated the actual cost of the repair job. Included were itemizations for labor, material, social security payments, relief and pension payments, overhead and other related payments in regard to repair. While the time spent by plaintiff's individual employees on the repair job in question is indicated in the records, the precise rate of pay per hour for each individual employee so engaged was not shown. In calculating the cost of the labor, a formula was employed whereby the average hourly rate of the members of a crew engaged in the type of work involved in a repair job such as this, was multiplied by the number of hours put forth by the workmen. The evidence shows that this method of computation is recognized under federal and state regulations as to public-utility billings, and that it is also recognized as proper accounting practice. The defendant offered no evidence showing error or unreasonableness thereof. Evidence of market value of the plaintiff's cable was not available. The measure of damages to property without market value is the reasonable cost of repairs necessary to restore it to its former condition. *Vetter v. Rein* (1931), 203 Wis. 499, 502, 234 N. W. 712. When determining this issue the trial court observed that: "With reference to the damages, the court is satisfied that a proper method of computing the damage is shown, and that the hours in question and materials used were properly allocated to this job."

We are not persuaded that the method employed by the plaintiff in computing cost of repair of the cable was improper under the circumstances, nor that the amount was unreasonable.

*By the Court.*—Judgment affirmed.