Scot Deering and Susan Deering, Plaintiffs-Appellants-Cross-Respondents,
v.
William Wangerin and Barbara Wangerin, Defendants-Respondents-Cross-Appellants, Jacob Basten, Mary Basten, David P. Gehrke, Kathleen L. Gehrke, Gerard Roffers, Carolyn Roffers, Ronald Van Caster and Judith Van Caster, Defendants-Respondents-Cross-Respondents.
No. 2004AP950.
Court of Appeals of Wisconsin.
Opinion Filed: April 26, 2005.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 CANE, C.J.
Scot and Susan Deering appeal a judgment that a remote garage, built by William and Barbara Wangerin on land they owned, did not substantially interfere with the Deerings' use of an easement running over that land. The Wangerins cross-appeal a judgment that they pay the attorney fees of their co-defendants, Jacob and Mary Basten, David and Kathleen Gehrke, Gerald and Carolyn Roffers, and Ronald and Judith Van Caster, whose claims were dismissed without prejudice before the trial began.
¶2 The Deerings argue the trial court erred when it determined that the Wangerins' garage did not unreasonably interfere with their use of their easement and their easement gave them use only of a twenty-foot corridor on the southerly side of the Wangerins' seventy-five-foot parcel. Based on those claims, the Deerings contend the trial court should have ordered the garage removed and compensated them for damages including loss of use and diminution of property value. The Deerings also contend the court exercised its discretion erroneously when it relied solely on one witness's testimony to establish the value of a tree the Wangerins removed from the Deerings' property. Finally, the Deerings argue the trial court erred when it refused to order the Wangerins to pay their attorney fees. They claim the trial court based its refusal on an erroneous finding that Scot did not have "clean hands," ignored the fact he was the prevailing party, and wrongly distinguished between him and the defendants who were dismissed from the case.
¶3 On cross-appeal, the Wangerins argue the trial court erred when it ordered them to pay the attorney fees of their co-defendants the Bastens, Gehrkes, Roffers, and Van Casters because the Wangerins did not bring the other defendants into the litigation and their garage did not interfere with the Deerings' easement rights. According to the Wangerins, the trial court's judgment effectively punishes them for prevailing.
¶4 We reject the Deerings' arguments that the trial court erred when it located an easement corridor within the seventy-five-foot parcel and agree that the Wangerins' garage did not unreasonably interfere with the Deerings' use of their easement. We therefore affirm that part of the judgment. However, because we conclude there was no legal authority to award the Wangerins' co-defendants their attorney fees, we reverse that part of the judgment.

Background
¶5 In 1984, the Deerings purchased 406 Olden Glen Road, a property with frontage on the Fox River. The land came with "an Easement of ingress and egress to and from said above described land over a strip of land 75 feet wide described as lying immediately Northerly of the following line which is the southerly boundary of said 75-foot strip."[1] When the Deerings bought their land, the seventy-five-foot strip was crossed by a graveled road. The Deerings and their neighbors used that road to enter their properties, to load and unload boats, and to access the Fox River. In addition to the graveled road, some or all of the neighbors used a graveled turnaround area. The Deerings also regularly parked vehicles and stored supplies within the seventy-five-foot parcel.
¶6 In 2001, the Wangerins bought a lot in the same area, also fronting on the Fox River, on which they planned to build a house.[2] Soon after that, they purchased the seventy-five-foot parcel of land, which lay between their property and the Deerings' land, over which the easement ran. The Wangerins cut and cleared parts of the easement area, planted trees and vegetation, placed rip rap, put in a snow fence, and eventually began to build a remote garage on the side of the seventy-five-foot parcel closest to the Deerings' property.
¶7 Trouble between the new neighbors began almost immediately. By May 2002, the conflict between the Deerings and the Wangerins had escalated to the point that the Deerings sued the Wangerins for interference with their easement rights. They also sought an injunction to prevent the Wangerins from continuing any projects within the seventy-foot strip, including the construction of the garage.
¶8 In April 2003, the Deerings began installing a pier on the Fox River within the seventy-five-foot parcela right they had under a second easement.[3] The Wangerins removed stakes and other construction items because they were not within the parcel. The Deerings began another pier. Again, the construction was on the Wangerins' land and the Wangerins removed it. After William Wangerin hired a surveyor to confirm the boundary between the seventy-five-foot parcel and his own property, the Deerings put in a third pier, just south of the northern border of the seventy-five-foot parcel. In response, the Wangerins and the Gehrkes installed[4] a second pier within the boundaries of the parcel. By July 2003, the time of the trial, there were thus two piers within the seventy-five-foot parcel.
¶9 At the beginning of the July trial, all defendants except the Wangerins were dismissed from the case. Following a two-day trial, the court rendered an oral decision. A post-trial hearing was held on August 4, 2003. In February 2004, the trial court entered findings of fact and conclusions of law and a decision on remedies. For the purposes of this appeal, the critical findings were: (1) the Wangerins' garage did not unreasonably interfere with the Deerings' easement; (2) the parties had to maintain a twenty-foot corridor with the seventy-five-foot parcel; (3) ingress and egress would be over a twelve-foot graveled road at the southerly portion of the corridor; (4) the Wangerins had to pay the Deerings $500 for the tree that was removed from the Deering property; and (5) the Wangerins had to pay the attorney fees of all parties except the Deerings.[5] This appeal and cross-appeal followed.

Discussion

Legal Standards
¶10 An easement is an interest in land owned by another. Kallas v. B & G Realty, 169 Wis. 2d 412, 419, 485 N.W.2d 278 (Ct. App. 1992). It creates two property rights: the dominant estate, which enjoys the privileges granted by the easement, and the servient estate, which permits those privileges to be exercised. See id. at 415-16. The owner of the servient estate may make all proper use of the land, but may not unreasonably interfere with the easement holder's use. See Wisconsin Tel. Co. v. Reynolds, 2 Wis. 2d 649, 652, 87 N.W.2d 285 (1958). An easement granted for a specified purpose may not, however, be enlarged in a way that places an added burden on the servient estate. See S.S. Kresge Co. v. Winkelman Realty Co., 260 Wis. 372, 376-77, 50 N.W.2d 920 (1952). Where an easement is explicitly created, we look to the instrument that created it to construe the relative rights of the landowners. See Hunter v. McDonald, 78 Wis. 2d 338, 342-43, 254 N.W.2d 282 (1977). Construction of the terms and purposes of the grant presents a question of law we review without deference. Edlin v. Soderstrom, 83 Wis. 2d 58, 69, 264 N.W.2d 275 (1978). Whether the terms of the grant are ambiguous is also a question of law. See Stauffacher v. Portside Props., Inc., 150 Wis. 2d 242, 245, 441 N.W.2d 328 (Ct. App. 1989).
¶11 If the grant does not locate a right-of-way, a "reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land .... If a location is not selected by either the servient or the dominant owner and they cannot agree upon a location, a court of equity has the power affirmatively and specifically to determine the location of the servitude." Werkowski v. Waterford Homes, Inc., 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966) (citing 17A AM. JUR., EASEMENTS, § 101, 711-12). According to Werkowski, the reasonable convenience of both parties is of prime importance and the court cannot act arbitrarily, but must proceed with "due regard for the rights of both parties." Id. We review equitable remedies for misuse of discretion. See Mulder v. Mittlestadt, 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984). The trial court properly exercises its discretion if it applies the appropriate law and the record shows there is a reasonable factual basis for its decision. See Burkes v. Hales, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991).

The Deerings' Appeal
¶12 The Deerings argue the easement that creates their right of ingress and egress over the Wangerins' seventy-five-foot parcel of land is not ambiguous and that it allows them use of the entire seventy-five-foot corridor. We disagree.
¶13 In 1945, Walter and Hildegard Kruger conveyed land fronting on the Fox River to Muriel Stebbings. At the same time, the Krugers granted Stebbings "an Easement of ingress and egress to and from said above described land over a strip of land described as lying immediately Northerly of the following which is the southerly boundary of the said 75 foot strip." In 1984, Stuart Stebbings sold that land to the Deerings. When the Wangerins bought the seventy-five-foot parcel in 2001, the Deerings thus unquestionably had an easement of ingress and egress over the parcel. But we do not agree the grant made their right of way coextensive with the parcel itself.[6]
¶14 Under the Deerings' theory, they have rights to drive, park, load, unload, store and otherwise use any part of the Wangerins' seventy-five-foot parcel at any time for ingress and egress. By logical extension, that right would thus limit the Wangerins' ability to build on their own property, to landscape it, and to exclude the Deerings from any part of it. However, an easement granted for a specific purpose, in this case ingress and egress, may not be enlarged in a way that places an added burden on the servient estate and it would certainly be a burden if the right to pass over the Wangerins' land was enlarged into a right that left them unable to exercise the fundamental rights of a property owner.
¶15 This is, as the trial court implicitly recognized when it rejected the Deerings' argument on this point, a classic example of an unambiguous grant that does not locate a specific right-of-way. Under those circumstances, "a convenient and suitable way is presumed to be intended ...." See, e.g., Werkowski, 30 Wis. 2d at 641 (citation omitted).
¶16 In this case, the trial court concluded the Deerings had, through practice, located a right-of-way along the existing graveled road and exercised its equitable powers to limit the easement to a twenty-foot corridor that encompassed that road.[7] The court then concluded that the location of the garage did not substantially interfere with that historical usage.
¶17 Based on their claim that the trial court determined that the easement was unambiguous, the Deerings argue that the court had no authority to restrict their right-of-way to a twenty-foot access corridor across the seventy-five-foot parcel. As we have already explained, a finding that the grant was unambiguous does not mean that the Deerings' easement unambiguously located a right-of-way whose dimensions were exactly those of the seventy-five-foot parcel.
¶18 Because the parties could not agree on the location of the Deerings' right-of-way, the trial court had the equitable power to fix a location that encompassed the graveled road the Deerings generally used to access their property.[8] The court's order did not limit the Deerings' easement to that road, which was only twelve feet wide. It rather expanded the corridor to a full twenty feet. The corridor's location reflects the Deerings' pattern of use; its width reflects the Deerings' concern about access for construction equipment, supply trucks, and other vehicles of some size. We thus conclude not only that the court considered the reasonable convenience of the Deerings and the Wangerins when it located the easement, but that the record provides a rational basis for its determination.
¶19 The law permits expansion of an easement to ensure reasonable and proper enjoyment. See, e.g., Scheeler v. Dewerd, 256 Wis. 428, 432, 41 N.W.2d 635 (1950). But once the purpose of the easement is satisfied, there is no requirement to expand the easement to accord the owner additional conveniences. Atkinson v. Mentzel, 211 Wis. 2d 628, 646, 566 N.W.2d 158 (Ct. App. 1997). In determining whether the remote garage interfered with the Deerings' reasonable enjoyment of their right to ingress and egress, the trial court found that Scot still drove the easement every day, that heavy trucks could still access his property, and that his property would be easier to access if he removed several obstacles he was responsible for maintaining. The court noted that Scot had to bring his boat in a different way and that Susan found the limited access intimidating and often had her husband park her car. Id. The trial court concluded, however, that these inconveniences did not rise to the level of unreasonable interference.[9] We agree.
¶20 An obstruction or disturbance of an easement is anything that wrongfully interferes with the easement owner's right by making its use "less convenient and beneficial than before." See Hunter v. McDonald, 78 Wis. 2d 338, 344, 254 N.W.2d 282 (1977) (citation omitted). The Deerings cite this proposition and others"[o]bstructions or disturbances are unauthorized and constitute nuisances"in support of their argument, but do not specify how they apply to the facts in this case. See id. (citation omitted). In McDonald, the supreme court upheld a decision that speed bumps at the entrance to a roadway, rocks and steel posts adjacent to the roadway, and a fence with openings only ten feet wide where the roadway crossed a property unreasonably interfered with the use of the easement. Id. at 345-46. Despite the fact that none of these objects were in the easement corridor, they damaged cars and made it impossible for fire and emergency vehicles to go over the road. Id. at 341. The court applied a nuisance analysis to conclude the property owner's wrongful act was an " unreasonable or unlawful use" of his own property. Id. at 344.
¶21 The question is thus whether the easement holder can use the easement as intended or whether the obstruction at issue unreasonably interferes with or substantially impairs that right. The purpose of the Deerings' easement is to provide "ingress and egress to and from said above described land over a strip of land 75 feet wide described as lying immediately Northerly of the following line which is the southerly boundary of said 75 foot strip." The agreement clearly gives the Deerings the right to pass to and from their property across the land described. After the Wangerins built their garage, the Deerings may have found it more difficult to park their boats or more time consuming to back into an area than to drive in a wide circle over the Wangerins' property,[10] but we agree with the trial court that their right to pass across that property was not unreasonably interfered with.
¶22 The Deerings conclude by arguing that the trial court erred when it refused to (a) order the remote garage removed; (b) order money damages for interference and diminution of property value;[11] and (c) award them attorney fees and costs. We need not address the first argument because the Wangerins' garage did not interfere with the Deerings' rights and therefore caused no injury. The Deerings suggest the trial court either erred when it decided that the Wangerins' tree valuation expert was the more persuasive or did not consider "the other witnesses." But the Deerings provide neither legal authority nor record citations to support that argument, so we need not address it here. See WIS. STAT. § 809.19(1)(e); see also M.C.I., Inc. v. Elbin, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). The Deerings finally insist the trial court had a responsibility to make them whole upon success[12] at trial and that the court could not find that Scot acted with "unclean" hands after awarding attorney fees to the Wangerins' co-defendants. We reject those arguments as well. The Deerings cite no legal authority[13] that would support an award of attorney fees and, based on the record, the court could have concluded that Scott's hands were "dirty" in a variety of ways.

The Wangerins' Cross-Appeal
¶23 On cross-appeal, the Wangerins argue the trial court erred when it ordered them to pay the attorney fees of their co-defendants, the Bastens, Gehrkes, Roffers, and Van Casters, because the Wangerins did not bring these defendants into the litigation and their garage did not interfere with the Deerings' easement rights.
¶24 The trial court explained its decision this way.
But for the Wangerins' activities, there would not have been a lawsuit. But for that lawsuit, the Van Casters, the Roffers, the Gehrkes and the Bastens would not have incurred any legal expenses .... One of the remedies that I'm going to impose to redress this wrong is to reimburse those parties for their attorneys' fees.
In its decision of remedies, the court added that it would not
separate the conduct of the Wangerins with respect to the allegations regarding the construction of the garage and with respect to interference with the waterfront easement rights.[14] The Wangerins triggered the naming of the other parties. Accordingly, this Court continues to believe that the neighboring property owners are innocent bystanders to this dispute and the Wangerins should reimburse them for their attorney's fees.
¶25 Under the American Rule, parties to litigation are ordinarily responsible for their own attorney fees. See, e.g., Elliott v. Donahue, 169 Wis. 2d 310, 323, 485 N.W.2d 403 (1992). Attorney fees are thus generally not awarded in the absence of a statute authorizing such awards or an enforceable contract to pay them. See Reid v. Benz, 2001 WI 106, ¶2, 245 Wis. 2d 658, 629 N.W.2d 262. Wisconsin courts have also recognized a few limited exceptions to the American Rule, including the "bad faith exception" and the Weinhagen Rule. Marquardt v. Milwaukee County, 2002 WI App 12, ¶7, 249 Wis. 2d 780, 639 N.W.2d 762. Whether attorney fees are recoverable is a question of law we review without deference. See id.
¶26 There is no contract in this case and neither the parties nor the trial court cite any statute that might provide authority for the award of attorney fees. The Deerings' amended complaint adds a claim for a declaratory judgment with respect to their easement "as it crosses or utilizes the Basten, Gehrke, Roffers and Van Caster Real Estate." Under WIS. STAT. § 806.04(8),[15] the trial court's power to grant supplemental relief based on a declaratory judgment or decree has been interpreted to include the power to award attorney fees under certain narrow circumstances. See Elliott, 169 Wis. 2d at 314-16. However, the supreme court has declined to extend Elliott's exception beyond the insurance contract context and we see nothing in the case before us that would justify interpreting WIS. STAT. § 806.04(8) to authorize the trial court's award. See DeChant v. Monarch Life Ins. Co., 200 Wis. 2d 559, 589, 547 N.W.2d 592 (1996).
¶27 The "bad faith" exception to the American Rule has been applied, like Elliott, in the context of insurance policies. "When an insurer acts in bad faith, a plaintiff is allowed to recover for all detriment proximately resulting from the insurer's bad faith ... which includes ... those attorney's fees that were incurred to obtain the policy benefits that would not have been incurred but for the insurer's tortious conduct." DeChant, 200 Wis. 2d at 572-73. Even if we were inclined to extend this exception beyond the realm of insurance contracts, there is no claim here that the Wangerins acted in bad faith and the exception applies only to bad faith claims. Id. at 578.
¶28 The Weinhagen rule, a judicially-created equitable exception to the American Rule, permits awards of attorney fees to an adverse party if the wrongful acts of a defendant have involved a plaintiff in litigation with others or placed him or her in such relation to others as to make it necessary for the plaintiff to incur expenses to protect his interest. Weinhagen v. Hayes, 179 Wis. 62, 65, 190 N.W. 1002 (1922). Weinhagen usually applies to attorney fees incurred in a prior action. See Meas v. Young, 142 Wis. 2d 95, 105, 417 N.W.2d 55 (Ct. App. 1987). This court has concluded, however, that the mere fact that attorney fees were incurred in the same action rather than a prior one may not preclude recovery in every case. See id. If plaintiff incurred expenditures and costs in collateral litigation "as a necessary and proximate result of the deceit, they are recoverable as part of damages sustained by him." Id. (citation omitted).
¶29 The trial court found that, but for the Wangerins' decision to build a garage in the seventy-five-foot parcel, the Deerings would not have sued and forced the Bastens, Gehrkes, Roffers, and Van Casters to litigate. But the court also found that the Wangerins' garage did not interfere with the Deerings' rights. Building the garage could not therefore have been a wrongful act. The court did find that the Wangerins interfered with the Deerings' easement right to build a pier within the seventy-five-foot parcel. But that act, even if it were wrongful, did not cause the Bastens, Gehrkes, Roffers, and Van Casters to be joined. At the urging of the court, their own attorneys, and by the actions of the Deerings, the Bastens, Gehrkes, Roffers, and Van Casters were joined as co-defendants months before the pier was built.
¶30 Because we conclude there is no authority to support awarding attorney fees to the Bastens, Gehrkes, Roffers, and Van Casters, we reverse that part of the judgments and order.
By the Court.Judgments affirmed in part and reversed in part.
NOTES
[1] The text goes on to describe the entire seventy-five-foot parcel, but does not include any language specifically locating the right-of-way.
[2] The Wangerins' seventy-five-foot parcel runs between the Deerings' property and the parcel on which the Wangerins built their home. If one stands facing the river, the Deerings' property is to the left of the Wangerins' property.
[3] The deed contained several easements in addition to the easement for ingress and egress, including "an easement to build and maintain a dock on Fox River opposite the 75 foot strip described above."
[4] The Wangerins then reinstalled the pier they had, with the Gehrkes' permission, removed when they were attempting to fix erosion on that area of the shore. Like the Deerings, the Gehrkes had an easement to build a pier on the river within the seventy-five-foot parcel.
[5] The trial court also concluded the Wangerins had interfered with the Deerings' easement right to build a dock on the shores of the Fox River. The Wangerins do not contest that determination, however, and it is only important to this appeal to the extent the court makes it a basis for its attorney fees decision.
[6] An easement is not a right that can be exercised over the "whole of the land." Werkowski v. Waterford Homes, Inc., 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966) (citation omitted).
[7] The court linked this easement with the dock easement by confining the Deerings' right to construct a dock within the seventy-five-foot parcel to the newly located twenty-foot corridor within that parcel.
[8] The corridor encompasses the graveled road that passes over the seventy-five-foot strip and connects with the Deerings' circular driveway. A twelve-foot blacktop highway begins near Highway 57 and runs west to the east boundary of the seventy-five-foot parcel, there it becomes the graveled road referred to earlier.
[9] The Wangerins, as owners of the land, retain the right to make use of the burdened property, including changing its use, as long as that use does not interfere with the easement. See Wisconsin Tel. Co. v. Reynolds, 2 Wis. 2d 649, 652, 87 N.W.2d 285 (1958).
[10] Scot claimed that he and his invitees "would commonly make a loop over the 75-foot parcel and into his property."
[11] The trial court did order the Wangerins to pay $500 for one tree. The Deerings contend the trial court should have awarded them $1,000.
[12] The Deerings do not succeed on this central issue as indicated by their appeal.
[13] This court will not consider arguments unsupported by legal authority. See State v. Shaffer, 96 Wis. 2d 531, 545-46 n.3, 292 N.W.2d 370 (Ct. App. 1980).
[14] The Deerings added the other neighbors to the amended complaint in September 2002. The pier that interfered with the Deerings' easement to build a pier within the seventy-five-foot parcel was not installed until 2003.
[15] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.