22 N.J. Super. 24 (1952)
91 A.2d 514
BENJAMIN MOORE, PLAINTIFF-RESPONDENT,
v.
ERNEST SCHULTZ, LEONARD SCHULTZ, GLADYS GRUENLER, MARION SCHULTZ, CATHERINE SCHULTZ, INDIVIDUALLY AND AS ADMINISTRATRIX OF FRANK SCHULTZ, DECEASED, AND FRED SCHULTZ & SONS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1952.
Decided October 7, 1952.
*26 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. Seymour Smith argued the cause for appellants (Messrs. Hein & Smith, attorneys; Mr. Ira D. Dorian, on the brief).
Mr. Michael A. Dwyer argued the cause for respondent (Messrs. Doughty & Dwyer, attorneys).
The opinion of the court was delivered by JAYNE, S.J.A.D.
The defendants feel aggrieved by the entry on March 21, 1952, of a judgment of the Chancery Division of this court, 18 N.J. Super. 219, and by this appeal challenge its propriety. Those basic elements of the plaintiff's alleged cause of action which are of a purely legalistic nature were submitted to the court for a declaratory determination upon a stipulation of the relevant facts. A concise narrative of the facts will be sufficiently serviceable.
On June 25, 1940, one Louisa Moore, a widow, by agreement in writing and under seal granted to one Frank Schultz the "exclusive right to enter upon her premises" situate in the Borough of Upper Saddle River, Bergen County, and "to remove sand and gravel therefrom," subject to certain specified limitations, as he "sees fit." The terms of the agreement provided that the "privilege" should extend for a period of ten years from the date of the instrument, with the option accorded Schultz to renew the privilege for a further period of ten years. In the exercise of the "privilege" Schultz agreed to pay Mrs. Moore ten cents per cubic yard *27 for the sand and 20 cents per cubic yard for the gravel which he would remove, subject to certain contingent market price increases. The agreement also contained the stipulation that it could not "be assigned without the written consent of the party of the first part or her son, Benjamin Moore."
Mrs. Moore died testate on November 2, 1941, and her son, Benjamin Moore, the plaintiff in this action, acquired the ownership of the premises as her devisee. Schultz installed machinery and other appropriate equipment on the premises and continued to exercise the so-called privilege in pursuance of the agreement until his death, intestate, on October 17, 1950. He had, however, on June 27, 1949, given written notice to the plaintiff that he exercised his option to renew the agreement as therein stated for the additional period of ten years. The defendants include his widow, who is also the administratrix of his estate, his next of kin and heirs at law, and the corporation through which he conducted his business.
On November 15, 1950, the plaintiff notified Catherine Schultz, the widow, individually and in her capacity as administratrix, and also the corporate defendant that he revoked "any and all licenses through which you or any of you may have been heretofore permitted to enter upon said premises and to remove therefrom any or all materials," i.e., sand and gravel.
The judge of the Chancery Division resolved that the license was revocable by the plaintiff, had been revoked, and that the defendants were entitled to remove from the property the machinery and other equipment placed upon it by the decedent Schultz.
Broadly stated, the defendants are in accord with the conclusion of the trial judge that the agreement conferred upon Schultz a privilege which in the circumstances became an irrevocable license coupled with an interest, but they impugn his determination that upon the death of Schultz the privilege did not pass by operation of law to his administratrix and next of kin.
*28 Assuredly, a simple license associated with the use of land is in the law a mere privilege or permission which confers upon the licensee no intangible interest in the land to which it is related. Rather does it assume the appearance of an excuse for what would normally be a trespass. But a profit a prendre is known in the law as a right to take something of value from the land of another. It is an incorporeal hereditament, since it is recognized as a right. Its name distinguishes it from such incorporeal hereditaments as the right to rents, franchises, and easements in that it denotes the special right to take something tangible from the land. Perhaps the most common illustrations of it are the right to take marl, loam, peat, sand, gravel, coal, and other minerals.
This form of incorporeal hereditament may be, and sometimes is, owned in connection with and as an appurtenance to land regarded as a dominant estate, or it may be owned as a corporeal right in gross. Vide, Hopper v. Herring, 75 N.J.L. 212 (Sup. Ct. 1907). Where a profit a prendre is in gross, it is true that it is in the nature of a personal privilege, but it is nevertheless a distinct, independent object of ownership which is also in its nature ordinarily alienable, assignable, and inheritable. While the right of profit a prendre in gross and a license coupled with an interest bear a resemblance, there is traditionally in the law a significant difference between them. Probably the nearest relation of a profit a prendre in the law is that which has been denominated an easement in gross. Indeed, any difference in their legal qualities is microscopic.
In the present case, however, the trial judge deemed that the agreement by reason of the action taken by Schultz in pursuance thereof conferred upon him a license coupled with an interest. At least it did that. We find in the stipulation of facts the acknowledgment that between the date of the execution of the agreement and a date approximating December 1, 1949, Schultz "invested substantial sums of money in equipment and stationary equipment designed to accomplish the separation and removal of soil deposits from *29 the premises in order to carry out" the purposes of the agreement.
It is true that a continued license coupled with an interest is in some circumstances irrevocable as long as such interest endures. The adjudications sustaining the irrevocability of such licenses are usually erected upon one of two theories. The one is that where the licensee expends substantial sums of money in pursuance of the privilege and such expenditures are made with the acquiescence of the licensor, the license is regarded as executed and, as such, irrevocable. The other more commonly employed theory is that in such circumstances, it would permit a fraud to be practiced on the licensee to allow the licensor to revoke, and therefore there is justification to invoke the preventive principles of equitable estoppel. Vide, Silsby v. Trotter, 29 N.J. Eq. 228 (Ch. 1878); East Jersey Iron Co. v. Wright, 32 N.J. Eq. 248 (Ch. 1880); Morton Brewing Co. v. Morton, 47 N.J. Eq. 158 (Ch. 1890); N.J. Suburban Water Co. v. Harrison, 122 N.J.L. 189, 194 (E. & A. 1939).
The last-mentioned theory is recognized in the decision of the Chancery Division, but it was there resolved that although the principles of equitable estoppel would have forbidden this plaintiff from revoking the so-called license during the lifetime of Schultz, they had no efficacious application to the plaintiff after the death of Schultz.
We are informed by the stipulation of facts that after the demise of Mrs. Moore the operations contemplated by the terms of the agreement were continued by Schultz until his death with the concordance and ratification of the plaintiff, who resided on the premises. During that period the plaintiff has collected compensation in accordance with the terms of the agreement of June 25, 1940. The defendants Ernest and Leonard Schultz, the male next of kin, have participated in the operations since 1946. There has been displayed on the premises with the knowledge of the plaintiff a relatively large sign bearing the inscription "Fred Schultz & Sons, Inc. Sand-Gravel * * *." That the plaintiff has appropriated *30 and made use of the agreement of 1940 for his own benefit and advantage seems to be indubitable. The agreement contains the renewal clause. But our inquisitiveness is fundamentally addressed to the intrinsic legal character of the "privilege" that Schultz acquired and to its quality, if any, of succession.
At the inception of our comments concerning the characteristics of the case, we observe that by the agreement "the party of the first part hereby grants to the party of the second part the exclusive right to enter upon her premises (description). To remove sand and gravel therefrom * * *," and we also notice that the compensation to be received by the party of the first part was based on the quantity of sand or gravel removed therefrom.
We ascribe some impressive significance to the use of the words "grants" and "exclusive right." Moreover the agreement was executed under seal, acknowledged and recorded, all of which are the appropriate formalities in the creation of an incorporeal interest. There is often something of implication in the use of language and in the conduct of the contracting parties in the search for their intentions. Quarry rights, mining rights, oil rights, and other similar rights relating to the severance of the physical substances of a servient tenement are normally more commonly interests a prendre appurtenant or in gross, or easements in gross.
Our study of the agreement, our conception of the exclusive character of the right granted and its distinctive nature, have guided us to the conclusion that the so-called privilege which was invested in Schultz was in the law within the category of a right of profit a prendre in gross, sometimes more modernly and liberally designated as an easement in gross. 2 American Law of Property (1952), § 8.9, et seq., pp. 235, et seq.; Thompson, Real Property (1939), §§ 250, 260, 262, and 268; Tiffany, Real Property (1939), §§ 842, 843; Saratoga State Waters Corp. v. Pratt, 227 N.Y. 429, 125 N.E. 834 (Ct. App. 1920). Cf. Wenger v. Clay Tp. of St. Joseph County, 61 Ind. App. 640, 112 N.E. 402 (Ind. App. Ct. 1916).
*31 Where such an interest is granted in fee, it will descend upon the death of its owner to his heirs as real property. Where, as here, its duration is measured by a definite period of years, it will be distributed to the next of kin in accordance with the statutory provisions applicable to the intestate succession of chattels real.
We conjecture that the learned trial judge would not have declined to apply the equitable remedy of estoppel to the act of revocation, had he not concluded that the agreement impliedly adopted by the plaintiff transported to Schultz only a mere personal privilege which in the category of a license terminated at the latter's death.
Anent this aspect of the agreement, the provision prohibiting the assignment of the "contract" without the written consent of Mrs. Moore or of the plaintiff is emphasized. If the right so granted was intended to be a mere license, the provision was needless. If the right thereby granted was intended to be a right of profit a prendre the clause was necessary and appropriate. Moreover in the present case we are concerned with the transference of the right by operation of law.
Our attention is also invited to the presence in the agreement of the right accorded Schultz "to remove sand and gravel therefrom as the party of the second part sees fit." We do not think the import of that verbiage or the composition of the agreement in its entirety exhibits a reliance upon any element of personal skill, efficiency, and judgment on the part of Schultz in the business of extracting sand and gravel, but rather displays the intention to permit Schultz to excavate and remove as much sand and gravel as he should wish. Indeed, we are informed that the plaintiff exhorted Schultz to increase the quantities to be removed by the use of additional equipment. Grants like the one before us are indicative of a commercial rather than a personal relationship between the owner of them and the owner of the servient tenement.
*32 Our consideration of the stipulated facts and of the applicable principles of law induces us to express the declaratory conclusion that the incorporeal right which Schultz acquired by the grant expressed in the written instrument under seal became upon his death an asset of personalty of his estate. No costs.