**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1588-24

NEWPORT ASSOCIATES
DEVELOPMENT COMPANY,

    Plaintiff-Appellant,

v.

PUBLIC SERVICE ELECTRIC
AND GAS COMPANY,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

CONSOLIDATED RAIL
CORPORATION,

    Third-Party Defendant.

_____

Argued March 5, 2026 – Decided May 12, 2026

Before Judges Mawla, Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000081-21.

Jonathan P. Vuotto argued the cause for appellant (McAndrew Vuotto, LLC, attorneys; Jonathan P. Vuotto, on the briefs).

Paige Nestel argued the cause for respondent (O'Toole Scrivo, LLC, and PSEG Services Corporation, attorneys; Paige Nestel, on the brief).

PER CURIAM

Plaintiff Newport Associates Development Company (Newport) appeals from a January 6, 2025 final judgment dismissing its claims against defendant Public Service Electric and Gas Company (PSE&G). We affirm.

I.

This action concerns two underground transmission lines operated by PSE&G. The facts relevant to this dispute were established at trial, where the trial judge heard testimony from seven witnesses and considered numerous documents admitted into evidence.

On April 29, 1971, pursuant to a license agreement (1971 License Agreement), PSE&G installed an underground transmission line (B Line) under 535 Monmouth Street, a/k/a 354 10th Street in Jersey City (Premises), owned

A-1588-24

by Erie Lackawanna Company (Erie).[1]  Erie conveyed the Premises to Consolidated Rail Corporation (Conrail) in March 1976.

On June 5, 1980, PSE&G and Conrail signed a license agreement (1980 License Agreement) that allowed PSE&G to install a second underground transmission line (C Line) and continue maintaining the existing B Line.  Under that agreement, PSE&G paid Conrail $300,000 as full consideration for the irrevocable right to continue maintenance of the B Line and the construction of the C Line.  The 1980 License Agreement was a standard form license used by Conrail, and it canceled and superseded the 1971 License Agreement.  Notably, the agreement:  (1) removed any reference to the arrangement as temporary; (2) specified only three means of termination—removal or abandonment of the cables by PSE&G, mutual consent of the parties, or by a violation of any of the terms, covenants, and conditions; (3) was binding on the parties and their successors and assigns; and (4) did not include the word revocable.

In November 1982, Conrail conveyed the Premises to Harbour City Development Company (HCDC).  The deed expressly stated the conveyance was subject "to (1) any easements or agreements of record or otherwise affecting the

---

[1]  The 1971 License Agreement lists Penn Central Transportation Company and PSE&G as the parties; however, the record identifies Erie as the rail company.

3

land hereby conveyed; and (2) the state of facts disclosed by a survey made by Geod Survey & Ariel Mapping Corporation, dated August 1982 and revised October 19, 1982, October 29, 1982[,] and November 15, 1982" (the Geod survey). The Geod survey included a map showing an "underground cable" running approximately parallel to the property line, but did not specify the cable as a transmission cable or it was operated by PSE&G. The deed made no reference to the 1980 License Agreement. A revocable license agreement was also recorded, which allowed Conrail to use the surface license area solely for rail transportation to and from storage, and to perform necessary work on the property to maintain the tracks.

On January 31, 1984, HCDC conveyed the Premises to Newport City Development Corporation (NCDC), which later changed its name to Newport in 1986. The record shows NCDC and Newport are the same entity.

In 2017, Newport discovered the lines while conducting a survey in preparation for a plan to develop the Premises with a multi-family apartment building. In February 2018, Newport requested from PSE&G "any information or records on this [lin]e," noting "[w]e cannot find any easements on record." The email attached excerpts from the Geod survey and photos of the aboveground red markers—tall, red poles, used to inform third parties and

4

property owners of the existence of the lines. In response, PSE&G confirmed the presence of transmission lines and attached a copy of the 1971 License Agreement and several other documents.

In June 2021, Newport filed an action against PSE&G, seeking a declaratory judgment challenging the transmission lines on the Premises. Approximately a year later, Newport applied to the Jersey City Planning Board to develop the Premises into a 246-unit residential building, which included a driveway over the underground transmission lines. The Planning Board approved the application on August 23, 2022.

In February 2023, Newport filed an amended complaint seeking a declaratory judgment the easement does not encumber the premises: (1) because Conrail had no rights to convey; and (2) the easement violates the statute of frauds. Newport also asserted, in the alternative, PSE&G violated the easement, sought specific performance, and a declaratory judgment voiding the easement due to a material breach by PSE&G, voiding the license, breach of contract, and trespass. Shortly thereafter, in March, PSE&G filed a third-party complaint against Conrail for indemnification and contribution. This third-party action was resolved and dismissed on July 15, 2024.

5

The bench trial was held over five non-consecutive days. After thoroughly considering the testimony of the witnesses and reviewing the documents admitted into evidence, the trial judge entered an order dismissing Newport's complaint and denied PSE&G's counterclaim seeking the designation of a prescriptive easement for the transmission lines. In a comprehensive opinion, the judge detailed his findings of fact and conclusions of law, ultimately determining PSE&G "has an irrevocable license to maintain the transmission lines on the [P]remises." Both the order and accompanying opinion were filed on January 6, 2025.

II.

Newport challenges the judge's determination the 1980 License Agreement was irrevocable as it pertains to Newport, arguing the license was revoked when Conrail conveyed the Premises to HCDC. It further contends the judge erred by placing the burden of proof on it, even though PSE&G asserted irrevocability as an affirmative defense.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). We apply "'a deferential standard'" when we "review a 'trial court's

determinations, premised on the testimony of witnesses and written evidence at a bench trial.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). Factual findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo the trial "court's interpretation of the law and the legal consequences that flow from established facts." Accounteks.Net, Inc., 475 N.J. Super. at 503-04 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We likewise defer to the credibility determinations made by a judge after a bench trial. Balducci v. Cige, 240 N.J. 574, 594-95 (2020). We "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg, 220 N.J. at 254.

Applying these principles, we conclude there is no reason to disturb the trial judge's ruling, which is supported by substantial credible evidence in the record. We therefore affirm substantially for the reasons expressed in the trial court's written opinion and add the following comments.

A-1588-24

"[A] license is an agreement that only gives permission to use the land at the owner's discretion." Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333, 341 (App. Div 2015). "A license is simply a personal privilege to use the land of another in some specific way or for some particular purpose or act." Twp. of Sandyston v. Angerman, 134 N.J. Super. 448, 451 (App. Div. 1975). A license is limited in scope by the granting agreement. Van Horn, 442 N.J. Super. at 341.

A license is generally subject to revocation "by a conveyance of the land upon which it was intended to operate." Kiernan v. Kara, 7 N.J. Super. 600, 603 (Ch. Div. 1950). However, a license "becomes irrevocable if the licensee expends substantial sums of money pursuing the privilege while the licensor acquiesces to the expenditures, or if permitting revocation would permit the licensor to practice a fraud on the licensee." Van Horn, 442 N.J. Super. at 342; see Moore v. Schultz, 22 N.J. Super. 24, 29 (App. Div. 1952).

The express language of the 1980 License Agreement intended to confer the benefit of the underground transmission lines to PSE&G and its successors and assigns. This agreement does not connote an intention the construction and maintenance of the B and C lines is temporary.

A-1588-24

We reject Newport's contention the mere payment of consideration, even if substantial, renders a license revocable. Newport's reliance on <u>River Development Corp. v. Liberty Corp.</u> 51 N.J. Super. 447 (App. Div. 1958) is misplaced. In <u>River Development Corp.</u>, the licensee paid consideration but failed to exercise the granted rights for many decades. 51 N.J. Super. at 453-54, 472-73. In contrast, PSE&G not only paid consideration but also exercised the rights granted by constructing and maintaining the transmission lines. <u>Moore</u>, 22 N.J. Super. at 29.

Notwithstanding the express terms of the 1980 License Agreement, Newport contends the license was revoked upon conveyance of the Premises by Conrail to HCDC, relying on Chancery Division cases. However, Newport's argument is belied by the record. The subsequent transfers from HCDC to NCDC to Newport were not true conveyances, as these entities are, in effect, the same. Accordingly, Newport remains bound by the terms of the 1980 License Agreement.

We are not persuaded by Newport's argument the judge improperly shifted the burden of proof from PSE&G. The two cases relied upon by Newport are inapposite to this matter. <u>Italian Fisherman, Inc. v. Commercial Union Assurance Co.</u>, addresses the affirmative defenses of arson, fraud, and false

A-1588-24

swearing. 215 N.J. Super. 278, 282 (App. Div. 1987). While F.K. v. Integrity House, Inc. focuses on charitable immunity as an affirmative defense. 460 N.J. Super. 105, 116 (App. Div. 2019).

The trial court properly required Newport to prove its claim the 1980 License Agreement was revocable. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 101(b)(1) (2025-2026). The record establishes Newport did not meet its burden to prove the agreement had been revoked or breached.

Moreover, the question of whether the 1980 License Agreement was irrevocable was one of fact, compelling an analysis of credibility. We therefore defer to the credibility determinations:

> The inconsistencies presented by [Newport's general counsel]'s foundational testimony and compounded by that of [Newport]'s own valuation expert that it would not only be able to construct the building as permitted by Jersey City, but increase the unit size substantially, deprecate[d] the credibility of [Newport]'s overall litigation position as to all its causes of action presented and [wa]s detrimental to [Newport]'s ability to meet its burden of proof.

The judge's credibility determinations are supported by the record.

Having reviewed the record, and applying our deferential standard of review, we are satisfied Newport failed to establish the 1980 License Agreement

10

was not irrevocable. We discern no abuse of discretion in the judge's dismissal of Newport's complaint. Accordingly, the judge properly entered judgment in favor of PSE&G and dismissed Newport's complaint.

### III.

Finally, Newport argues for the first time on appeal the court erred in its application of the law, claiming its lack of notice of the license protects it as a bona fide purchaser of the Premises. We do not consider issues that were not properly raised before the trial judge, unless the court's jurisdiction is at stake or the issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). This issue does not implicate either the court's jurisdiction or a matter of public importance.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1588-24